882 F.2d 97
 14 Fed.R.Serv.3d 27
 Janet L. ROWLAND; Donald E. Rowland, Plaintiffs-Appellants,
v.
Donald A. PATTERSON, M.D.; Tom J. Altizer, M.D.; Michael
A. Winslow, M.D.; Robert K. Hobbs, M.D.; Robert
J. Cirincione, M.D., Defendants-Appellees.
 No. 87-1721.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1989.
Decided Aug. 10, 1989.
 
 LaVonna Lee Vice (Marvin Ellin, Ellin & Baker, Baltimore, Md., on brief), for plaintiffs-appellants.
 Conrad Whiting Varner, Frederick, Md. (Strite, Schildt & Varner, Hagerstown, Md., Kathleen Howard Meredith, Laura C. McWeeney, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, en banc.
 PHILLIPS, Circuit Judge:
 
 
 1
 Maryland law requires medical malpractice claimants to exhaust an arbitration remedy provided by the state as a precondition to bringing any civil action on the claim in state or federal court. The question on this appeal is whether when a rejected arbitration claim is followed by a federal action invoking diversity jurisdiction, diversity is determined by the parties' citizenship at the time the state arbitration claim was filed or at the time the federal diversity action was later commenced. We hold that citizenship at the time the federal action was commenced by filing a complaint controls, and on that basis vacate the district court's contrary ruling and its resulting dismissal of this action for lack of diversity jurisdiction.
 
 
 2
 * This action is one for medical malpractice brought by plaintiffs Janet Rowland and Donald Rowland against five medical doctors, the appellees on this appeal. Pursuant to Maryland law, the Rowlands were required to file a claim with the Maryland Health Care Claims Arbitration Office (HCAO) as a precondition to bringing a legal action for malpractice in either state or federal court. Md.Cts. & Jud.Proc.Code Ann. Sec. 3-2A-02. HCAO is an administrative agency of the State of Maryland, not a court of law.
 
 
 3
 The Rowlands filed their claim with the Maryland HCAO on July 16, 1985. At the time they filed this claim, both the Rowlands and the defendants were citizens of Maryland.
 
 
 4
 On May 6, 1987, the HCAO granted defendants' motion for summary judgment on the ground that the claim was untimely under the three-year statute of limitations applicable to medical malpractice claims against health care providers in Maryland. Md.Cts. & Jud.Proc.Code Ann. Sec. 5-109.
 
 
 5
 On June 15, 1987, plaintiffs commenced this action by filing their complaint in the United States District Court for the District of Maryland, alleging that they were residents of West Virginia at the time they filed their complaint in federal court. Defendants disputed the plaintiffs' allegation that on June 15, 1987, they were citizens of West Virginia and argued alternatively that in any event the time for determining diversity was July 16, 1985, the date the claim was filed with HCAO.
 
 
 6
 The district court did not address the disputed issue of the plaintiffs' citizenship at the time their federal complaint was filed, but dismissed the action on the ground that for diversity purposes the action was commenced on July 16, 1985, when the claim was filed with the HCAO, at which time the parties concededly were not of diverse citizenship. The district court observed that under the Maryland statute the filing of the HCAO claim tolled the state statute of limitations. Concluding that there should not be two dates for commencement of suit, and because of a concern not to "expand" diversity jurisdiction, the court dismissed the action.
 
 
 7
 This appeal followed.
 
 II
 
 8
 From the beginning of the diversity jurisdiction, the rule in actions commenced by plaintiffs in federal court has been that the citizenship of the parties at the time of commencement of the action determines whether the requisite diversity exists. See Mollen v. Torrance, 22 U.S. (9 Wheat.) 537, 6 L.Ed. 154 (1824); Conolly v. Taylor, 27 U.S. (2 Pet.) 556, 7 L.Ed. 518 (1829). The rule is not derived from nor dependent upon interpretation of either the constitutional source of diversity jurisdiction in Art. III, Sec. 2, or its statutory grant in 28 U.S.C. Sec. 1331. Neither text expressly or by implication addresses this interstitial question. The rule is therefore purely a judicial one, announced and reiterated in the earliest Supreme Court cases as an a priori principle, apparently grounded simply in then customary judicial ways of looking at the attachment of jurisdiction and in the obvious necessity to have some clear rule on the matter. See Mollen, 22 U.S. at 539 (Marshall, C.J.) ("It is quite clear, that the jurisdiction of the court depends on the state of things at the time of the action brought...."); Conolly, 27 U.S. at 565 (Marshall, C.J.) ("[A] jurisdiction depending on the condition of the party is governed by that condition as it was at the commencement of the suit."). This is not the only rule that might validly (so far as any constitutional or statutory constraints are concerned) have been adopted to control on the point, but its reliability as a convenient bright-line mechanical rule that is clearly compatible with general notions of the attachment of jurisdiction has assured its uninterrupted continuation from the beginning. See generally 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3608 (1984) (hereinafter Wright, Fed.Prac.).
 
 
 9
 While over time there have been various ways in which a federal action could be "commenced,"[1] since 1938 civil actions are, per the civil rules, commenced by "filing a complaint with the court." Fed.R.Civ.P. 3. Since the official Rule's adoption therefore, this public act of filing has fixed the time of commencement of federal civil actions, hence the convenient and reliable reference point for determining the existence of diversity under the broader, antecedent "time of commencement" rule.
 
 
 10
 We make these obvious points simply to indicate that the basic rule is one of federal interstitial common law, judicially created, grounded in policy and necessity rather than in any constitutional or statutory commands or constraints. And to make the further point that a routine application of the basic rule as now made act-specific by Rule 3 would require that diversity be determined as of the time the federal complaint in this action was filed rather than, as the district court held, the time that the earlier state arbitration claim was filed.III
 
 
 11
 The best way to address the jurisdictional issue here is by considering the arguments made by appellees for not applying the basic rule as now made act-specific by Rule 3. There are essentially two arguments as we understand the appellees' position. The first is that application of the federal time of commencement rule here "would violate well established principles of Maryland's substantive law," hence, presumably, the principle of Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Appellees' Brief at 6.[2] The second, and alternative argument is that even if a federal rule fixing the time for determining diversity is applicable, the appropriate federal rule is that applied in removal cases, which looks to the time of commencement of any prior "action before a state tribunal." Appellees' Brief at 15.
 
 
 12
 We take these in order and also consider a third argument that may be implicit in appellees' position.
 
 
 13
 * There is no Erie problem here. It is true that Maryland's statutory requirement of arbitration as a precondition to legal action has substantive aspects which, under Erie, must be honored by federal courts. Most critically, the precondition itself must be enforced by those courts. We have so held. Davison v. Sinai Hosp. of Baltimore, Inc., 462 F.Supp. 778 (D.Md.1978), aff'd, 617 F.2d 361 (4th Cir.1980) (diversity action properly dismissed for failure to comply with precondition). Furthermore, the statutory provision that filing the arbitration claim tolls the applicable Maryland statute of limitations must be honored by federal courts under the settled principle that such state tolling provisions are effectively substantive for Erie purposes. Walker v. Armco Steel Corp., 446 U.S. 740, 750-51, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980).
 
 
 14
 But that exhausts--at least for purposes of this case and the issues presented on this appeal--any Erie-protected elements of the state statute. The state law does not purport to fix the time for determining federal diversity jurisdiction--even assuming that it might constitutionally do so, a matter not before us. There is in consequence simply no question here of displacing any state rule of decision (of whatever nature) with the federal rule, hence there is no impediment under Erie to applying the federal rule. Cf. Walker, 446 U.S. at 751, 100 S.Ct. at 1985 ("Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations.").
 
 B
 
 15
 The alternative argument, that if federal law applies, it should be the federal rule for determining diversity in removed cases, is equally unavailing.
 
 
 16
 The removal rule is different, and in a way which, if applicable, would support the appellees' position. For it requires that to support diversity jurisdiction in removed cases, diversity must have existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal. See 14A Wright, Fed.Prac., Sec. 3723, at 311-314 (1985).
 
 
 17
 The short and sufficient answer to this argument is twofold. First, technically this is not a removed case, originally commenced in a state court, but a federal case which originated in the federal system with the filing of a federal complaint. It is therefore one to which the federal time of commencement rule literally applies. Second, and more important, it does not have the features that gave rise to the different federal rule for removed cases. That rule apparently has been thought necessary to prevent nondiverse defendants in a state-filed action from acquiring a new domicile, removing on the basis of diversity, and thereby depriving plaintiffs of their forum of choice. See id. at 313-14. Here the parties who allegedly have brought about diversity are not defendants but the plaintiffs, so that a successful invocation of federal jurisdiction here will not have involuntarily deprived any party of any original rightful choice of forum. It is true that plaintiffs' conduct may have allowed them to "manufacture" a basis for jurisdiction that did not exist from the accrual of their claim. But this is simply an accepted and necessary consequence of the basic right of plaintiffs so to "manufacture" a bona fide diversity jurisdiction. See generally 13B Wright, Fed.Prac. Sec. 3608, at 450-51.
 
 
 18
 Neither the form nor the underlying rationale for the federal removal rule requires its application here.
 
 C
 
 19
 In the end, the only possible argument for not applying here the federal time of commencement rule is one of policy. Though, as indicated, appellees seemingly have confined their position to contending that Erie considerations forbid application of the rule, or that the removal rule analogy somehow compels it, we think it appropriate to address this last possibility as well. We do so for two reasons: first, it may be implicit in appellees' formal arguments which, as indicated, were not altogether clear as to their conceptual bases; second, it was the basis for the vacated panel majority opinion in this case. 852 F.2d 108, 110-11 (4th Cir.1988).
 
 
 20
 Under this theory, cases of this type presumably would be treated as special cases requiring special treatment. Though not controlled either by state substantive rules or by the federal removal rule, neither should they be controlled by Rule 3's fixing of the "time of commencement" as the time of filing a federal complaint. Presumably, the special nature of such cases would be that state law has imposed some substantively enforceable precondition to maintaining a legal action upon a particular claim. In such cases, it could be contended, the federal rule for determining diversity should, as a matter of policy, be by reference to the act commencing compliance with the precondition rather than the act of filing a later federal complaint.
 
 
 21
 Assuming that such a policy choice were possible for us in the face of Rule 3--a matter of obvious doubtfulness that we need not decide--we would not make that choice generally, and specifically decline to make it in this case. It would not be a good policy for general application in "precondition" cases. Certainly it would not be as good a policy as continuing to adhere to the basic rule in such cases, for two reasons.
 
 
 22
 First, the basic rule insures greater certitude in making the jurisdictional determination at issue. It provides a uniform reference point in the form of a readily identifiable act of public record, uniformly recorded throughout the federal system. By contrast, reference to the many acts that might be deemed to "commence" compliance with the variety of present and future state preconditions to suit would be fraught with obvious uncertainties and administrative difficulties.[3]
 
 
 23
 Second, there is nothing to choose between the two rules in terms of the relative fairness of their applications over time. The disadvantage presumably thought to result to the defendants in this case from application of the basic rule is that it may permit plaintiffs to "manufacture" a basis for federal jurisdiction that would not exist were defendants' proposed rule adopted. The basic rule obviously may have that effect in this case, but the defendants' proposed rule would not protect future defendants from the same result. The very occasional plaintiff minded to "manufacture" diversity jurisdiction by going to the trouble of changing domicile would be as able to do so under defendants' proposed rule as under the basic rule.[4]
 
 
 24
 In terms of their essential fairness in this respect, the two rules are therefore a standoff. Under the circumstances, stability and certainty of application dictate adhering to the well-settled, known rule, and so we choose, assuming that we have any choice in the face of Rule 3.
 
 IV
 
 25
 For these reasons we hold that the district court erred in dismissing the action because the parties were not of diverse citizenship at the time the state arbitration claim was filed. The appropriate rule for application here is that the existence of diversity should be determined by reference to the time the federal complaint was filed. Accordingly, we vacate and remand the action for further proceedings consistent with this opinion.[5]
 
 
 26
 SO ORDERED.
 
 
 
 [1]
 Until adoption of the federal rules in 1938, state law, per the Conformity Act, ch. 255, Sec. 5, 17 Stat. 197 (1872), determined the specific acts, hence times, of commencement of federal actions at law. See 1 Moore's Federal Practice p 3.03 (1989). The times were thus various, and specific applications of the time of commencement rule, comparably various
 
 
 [2]
 The appellees do not invoke Erie by name, but their argument based upon the primacy of state substantive principles could only rest upon Erie 's constitutional constraints
 
 
 [3]
 Though state prelitigation procedures are not, of course, confined to medical malpractice claims, the state medical malpractice procedures presently in place provide an apt illustration of the difficulties and uncertainties that the proposed rule would produce. There are presently in effect a number of state procedures generally comparable in the critical respect to Maryland's. While they vary greatly in detail, all require acts, some multiple acts, of one kind or another that could be contended to be the "commencement" of the preliminary proceeding, hence, under the theory under discussion, the "commencement" of any ensuing legal action. See, e.g., Fla.Stat.Ann. Secs. 768.041 et seq. (1986) (claimant required by Sec. 768.57 "[p]rior to filing a claim ... [to] serve upon each prospective defendant ... a notice of intent to initiate litigation...."); Hawaii Rev.Stats.Ann. Secs. 671-11 et seq. (1988) (claimant required by Sec. 671-12 to "submit the claim to the medical claim review panel before a suit based on the claim may be commenced in any court of this State"); Idaho Code Ann. Secs. 6-1001 et seq. (1979) (claimant required by Sec. 6-1007 to serve "a true copy of the claim" at the "commencement" of compulsory proceedings for prelitigation consideration); La.Rev.Stat.Ann. Sec. 40:1299.47 et seq. (Supp.1989) (per Sec. 1299.47(B)(1)(a)(i), "No action ... may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel...."); Mont.Code Ann. Sec. 27-6-101 et seq. (1987) (per Sec. 27-6-301, "Claimants shall submit a case for consideration of the [medical legal panel] prior to filing a complaint in any ... court ... by addressing an application ... to the director of the panel."); N.H.Rev.Stat.Ann. Secs. 519-A:1 et seq. (1974) (per Sec. 519-A:2, claims may be voluntarily submitted to hearing panel "prior to institution of any litigation [by] fil[ing] initially with the clerk of court...."); New Mex.Stat.Ann. Secs. 41-5-1 et seq. (1978) (per Sec. 41-5-15, "No malpractice action may be filed in any court ... before application is made to the medical review commission...."). Pa.Code T. 37 Secs. 171.1 et seq. (1989) (per Sec. 171.23, "An action may be commenced [before an arbitration panel] by the filing of [a] fee ... and a notice complaint or complaint with the Administrator ... in person or by certified mail...."); 9 Utah Code Ann. Secs. 78-14-1 et seq. (1987) (per Sec. 78-14-12, "prelitigation consideration of ... claims ... condition precedent to commencing litigation"; "party initiating ... shall file a request ... with [state agency] within 60 days after the filing of a statutory notice of intent to commence action...."); Va.Code Ann. Secs. 8.01-581.1 et seq. (1984 & Supp.1988) (per Sec. 8.01-581.2, claimant must "notify" putative defendant of claim by mail "prior to commencing" an action, whereupon either claimant or potential defendant may then "request" medical panel review by mailing request to Chief Justice); Wis.Stat.Ann. Secs. 655.42 et seq. (Supp.1988) (per Sec. 655.44, request for mediation a precondition to court action; "shall be delivered in person or sent by registered mail to the director"); Wyo.Stat. Secs. 9-2-1501 et seq. (1987) (per Sec. 9-2-1506, review by medical review panel precondition to legal action; instituted by "application" to panel director)
 These statutes sufficiently illustrate the difficulty and uncertainty that would result from rejection of the nationally uniform rule based on Rule 3 in order to accommodate this sort of state precondition to legal action.
 
 
 [4]
 No rule except one that fixed diversity as of the time at the latest that a cause of action accrued could protect putative defendants against this inevitable consequence of the basic right of a plaintiff originally to choose both the forum and the timing of an action. The unworkability of any such rule is obvious and is not suggested here. See 13B Wright, Fed.Prac. Sec. 3608, at 452
 
 
 [5]
 By this holding we do not of course purport to decide the jurisdictional issue raised by defendants' alternative objection that plaintiffs were not of diverse citizenship at the time the federal complaint was filed. That issue presumably remains for resolution by the district court under the proper time of commencement rule