**Patricia Ann WHITCOMB, et al.**

v.

**POTOMAC PHYSICIANS, P.A., et al.**

**Civ. No. JFM–93–1098.**

United States District Court, D. Maryland.

Sept. 15, 1993.

Daniel Schultz, David M. Kanter, Washington, DC, for plaintiff.

Barbara McC. Stanley, Anderson, Coe & King, Baltimore, MD, David E. Manoogian, Epstein, Becker & Green, Washington, DC, Kurt D. Karsten, Annapolis, MD, for defendant.

### MEMORANDUM

MOTZ, District Judge.

On February 9, 1993, plaintiffs filed a claim before the Maryland Health Claims Arbitration Office ("MHCAO") against Potomac Physicians, P.A. ("Potomac"), Health Care Corporation of the Mid–Atlantic ("Care First"), Anne Arundel Diagnostics, Incorporated and Anne Arundel Health Care Services, Incorporated (collectively "AAD") and John Doe[1]. The claim consists of two counts, negligence and loss of consortium, arising out of the alleged improper diagnosis and treatment of Mrs. Whitcomb's breast cancer. On April 16, 1993, Care First removed the claim to this court on the ground that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1988 & 1990 Supp. II), preempts the claim. Plaintiffs and AAD have moved to remand the action to the MHCAO.

### I.

Mrs. Whitcomb was a member of Care First's health plan. Potomac is a corporation which operates primary health care clinics and is under contract with Care First to provide health care services to members of Care First's health plan. Anne Arundel Diagnostics is a corporation which provides a

---

1. Plaintiffs define Joe Doe as health care providers who are associated with either AAD or Potomac and who participated in the alleged negligent acts, but whose identity is not certain.

variety of health care services. These services include performing, interpreting and reporting diagnostic radiology studies such as mammographies. Anne Arundel Health Care Services is a corporation that merged with Anne Arundel Diagnostics after the events in question occurred.

On May 12, 1989, Mrs. Whitcomb underwent a mammography at AAD's facilities because of the appearance of a lump in her right breast. After the mammography was completed, AAD personnel reported no significant observations. Subsequently, Mrs. Whitcomb was informed by Potomac that her mammography was normal and that she did not need to be concerned about the lump.

The lump did not disappear during the remaining months of 1989 and in December Mrs. Whitcomb obtained from Potomac a referral to a surgeon for an additional evaluation. On January 9, 1990, Dr. U.R. Sunkara examined Mrs. Whitcomb and in a written report made the following recommendation:

> [I]t is therefore advised that [Mrs. Whitcomb] have an ultrasound evaluation of this area (upper quadrant of the right breast) to see if mass is solid or cystic. If cystic she will probably not need any intervention. If it is a solid mass she will be advised to have excision of the mass. Therefore advise ultrasound evaluation of the upper quadrant of the right breast.

This evaluation was allegedly sent to Potomac and placed in Mrs. Whitcomb's file, but no ultrasound or any other testing was performed. According to plaintiffs, Potomac did not inform Mrs. Whitcomb of the contents of Dr. Sunkara's report or that Dr. Sunkara had prescribed an ultrasound evaluation.

Mrs. Whitcomb switched health care plans in 1992 from Care First to Kaiser Permanente. In May 1992, she underwent another mammography, another ultrasound, and, for the first time, a biopsy, which revealed a malignant growth. Mrs. Whitcomb subsequently underwent a right modified radical mastectomy and post-surgical adjunctive chemotherapy.

In the claim which they have filed with the MHCAO, plaintiffs allege that AAD was negligent in misinterpreting the May 1989 mammography, in not performing additional physical evaluations of Mrs. Whitcomb and in not making a report and recommendation to Potomac that further action be taken. Plaintiffs similarly allege that Potomac was negligent in not heeding Dr. Sunkara's recommendation that Mrs. Whitcomb obtain an ultrasound, in not performing any further evaluations and in failing to inform her of the contents of Dr. Sunkara's report. As to Care First, plaintiffs allege that it is responsible for the negligence of Potomac under the doctrine of respondeat superior.

## II.

### A.

The first question presented is whether a proceeding before the MHCAO is a "civil action brought in a State court" within the meaning of 28 U.S.C. §§ 1441 and 1446. Arguing that it is not, and that it is thus not removable, plaintiffs and AAD cite *Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). There, the plaintiff sought a declaratory judgment that the Maryland Health Care Malpractice Claims Act, Md.Cts. & Jud.Proc.Code Ann. § 3–2A–01 *et seq.* (1989 Repl.Vol. & 1992 Supp.), violated the Maryland Constitution's separation of powers, right to jury trial and equal protection provisions. In concluding that the Act passed constitutional muster, the Court of Appeals found that it did not improperly vest judicial power in an administrative agency because the arbitration panel selected by the MHCAO was not a judicial body for purposes of analysis under the Maryland Constitution. The factor which the Court of Appeals deemed most critical to its holding was that awards made by MHCAO arbitration panels are not binding on the parties.

Arguably, different considerations apply in determining whether or not a state administrative tribunal is a "State court" within the meaning of §§ 1441 and 1446 than in deciding the constitutional questions posed in *Johnson*. In *Floeter v. C.W. Transport, Inc.*, 597 F.2d 1100 (7th Cir.1979), the Seventh Circuit found that the Wisconsin Employment Relations Commission ("WERC") fell within the ambit of those sections. The case had been filed with the WERC by fourteen employees against their union and employer

for alleged violation of a collective bargaining agreement. Upholding the defendants' right of removal, the court stated that "the title given a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision of the forum." 597 F.2d at 1102. The court went on to say:

> The complaint filed with the WERC was basically a breach of contract and unfair representation action; it could have been brought in either state or federal court as alternative forums, but would have been determined by federal law regardless of the forum in which it was brought; WERC procedures are substantially similar to those traditionally associated with the judicial process; the WERC's need to resort to the court system for enforcement of its orders does not change the essentially judicial character of the proceedings; and the state's interest in providing a "convenient and expeditious tribunal to adjudicate the rights and interests of parties to a labor dispute" is not substantially greater than the state's interest in maintaining any court system and does not outweigh the defendant's right to remove the action to federal court.

*Id.* (footnotes omitted).

## B.

■ Having posed this threshold question, I will avoid it. Even if an arbitration proceeding before the MHCAO is susceptible to removal,[2] removal here was improper. It is well established that ordinarily all defendants must consent to a removal. *See, e.g., Adams v. Aero Serv. Int'l, Inc.*, 657 F.Supp. 519, 521 (E.D.Va.1987). Here, not only is unanimity for the removal lacking, one of the defendants has affirmatively opposed it.

■ One court has "refined" the unanimity of consent rule to require the consent "only of those parties who would independently have the right to remove," i.e. only those against whom a federal claim is asserted. *Hill v. City of Boston*, 706 F.Supp. 966, 968 (D.Mass.1989). Other courts have rejected this refinement, finding that the general rule is supported by "the concern that one defendant not be permitted to impose his choice of forum upon other unwilling defendants and an unwilling plaintiff." *Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir.1992), *quoting Hess v. Great Atlantic & Pacific Tea Co.*, 520 F.Supp. 373, 375 (N.D.Ill.1981). That concern is entirely legitimate and in my view prevails, at least where, as here, the plaintiff and non-consenting defendants have sound reason for desiring to remain in the state forum and where another route may be available for the defendant to obtain an expeditious ruling on the federal question unique to the claims against it.[3]

A separate order remanding this action to the MHCAO is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herewith, it is, this 15th day of September 1993

---

2. I might note that in diversity cases the question of whether an MHCAO arbitration proceeding is "a civil action brought in a State court" is somewhat academic since it has been held that *Erie* requires that the MHCAO arbitration procedure be followed before a judicial action for medical malpractice may be maintained. *See Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir.1989); *Davison v. Sinai Hosp. of Baltimore*, 462 F.Supp. 778, 780 (D.Md.1978).

3. Federal courts are ordinarily wary of entertaining declaratory judgment actions where parallel state court litigation is pending. Here, however, several factors suggest that despite the pendency of the MHCAO arbitration proceeding, a federal declaratory judgment action may be appropriate as a means to obtain a ruling on the question of whether Care First can be held liable under the doctrine of respondeat superior for the allegedly negligent acts of Potomac. First, the issue of whether this question "relates to" employee benefits plans and thus is governed by federal rather than state law is one of far reaching implications. Does a national rule apply to the respondeat superior question or is the question governed by the laws of fifty different states? Second, assuming that a single national standard applies, the answer to the underlying substantive question is of equally far reaching importance. Third, both of the prior questions are quintessentially federal ones that it seems proper for the lower federal courts to address if requested by an interested party. Fourth, it appears that both of the questions are separate and distinct from the malpractice issues to be litigated before the MHCAO. Thus, the institution of a declaratory judgment action would be unlikely to interfere with the progress of the MHCAO proceeding.

ORDERED that this action be remanded to the Maryland Health Claims Arbitration Office.