64 F.3d 155
 FAIRFAX COUNTY REDEVELOPMENT & HOUSING AUTHORITY, Plaintiff-Appellant,
v.
W.M. SCHLOSSER COMPANY, INCORPORATED, Defendant-Appellee.
FAIRFAX COUNTY REDEVELOPMENT & HOUSING AUTHORITY, Plaintiff-Appellee,
v.
W.M. SCHLOSSER COMPANY, INCORPORATED, Defendant-Appellant.
 Nos. 93-1533, 93-1556.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 26, 1993.
Decided Sept. 5, 1995.
 
 ARGUED: Dennis Roane Bates, Senior Assistant County Attorney, County Attorney's Office, Fairfax, VA, for appellant. Michael Jay Cohen, General Counsel, W.M. Schlosser Company, Inc., Hyattsville, MD, for appellee. ON BRIEF: David P. Bobzien, County Attorney, Robert Lyndon Howell, Deputy County Attorney, Fairfax, VA, for appellant.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 Reversed and remanded by published opinion. Judge RUSSELL wrote the majority opinion, in which Judge HALL concurred. Judge WIDENER wrote a dissenting opinion.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is an appeal of a district court's order affirming, on appeal, the state law findings of a Virginia state agency. We conclude that the district court was without jurisdiction to review the state agency's findings and, therefore, we reverse.
 
 I.
 
 2
 The case arose out of a contract dispute between Fairfax County Redevelopment and Housing Authority (Housing Authority) and W.M. Schlosser Company (Schlosser), a contractor who contracted to build a housing project for the Housing Authority. Schlosser alleged that the Housing Authority had not paid it in full under the parties' contract and brought a state administrative claim for the amount owed. The Fairfax County Executive, to whom the claim was brought under Virginia's administrative scheme, found that the Housing Authority had breached the parties' contract and ordered it to pay Schlosser the amount Schlosser sought.
 
 
 3
 The Housing Authority appealed the County Executive's decision to a Virginia circuit court under Va.Code Sec. 11-71, which allows for judicial review of state administrative decisions involving contract disputes. Schlosser removed the Housing Authority's appeal to federal district court. The district court reviewed the County Executive's decision under Va.Code Sec. 11-71 and, finding that the decision was not arbitrary or capricious, entered a judgment for Schlosser in the amount awarded by the County Executive.
 
 II.
 
 4
 Removal of suits from state court to federal court is authorized by 28 U.S.C. Sec. 1441, which states in relevant part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction ... may be removed by the defendant...." 28 U.S.C. Sec. 1441(a). The district court here determined that it had original jurisdiction over the Housing Authority's appeal of the County Executive's decision under 28 U.S.C. Sec. 1332, the diversity statute. Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions" in which the amount in controversy exceeds $50,000 and the parties are diverse. 28 U.S.C. Sec. 1332(a).
 
 
 5
 The Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), considered whether a federal district court may, under its diversity jurisdiction, review the findings of a state administrative agency. An oil company had brought an action in federal court to enjoin a state commission's decision to grant a drilling permit. The recipient of the permit argued to the Supreme Court that, as the action was an appeal from a state agency, the federal district court lacked jurisdiction to hear it. The Court found that the district court did have jurisdiction, but only because the action was not an "appeal from the State Commission," but "a simple proceeding in equity to enjoin the enforcement of the Commission's order." Id. at 317, 63 S.Ct. at 1099. The Court noted: "[O]f course the Texas Legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal...." Id.
 
 
 6
 The Court applied this rule that federal district courts are courts of original jurisdiction and, thus, cannot review on appeal findings of state agencies in Chicago, Rock Island & Pac. R.R. v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954), where a railroad company had asked a federal district court in its diversity jurisdiction to review a state agency's assessment of condemnation damages owed to a landowner. The Supreme Court affirmed the district court's dismissal of this action, stating:
 
 
 7
 The United States District Court for the Southern District of Iowa does not sit to review on appeal action taken administratively or judicially in a state proceeding. A state "legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal...."
 
 
 8
 Id. at 581, 74 S.Ct. at 295 (quoting Burford, 319 U.S. at 317, 63 S.Ct. at 1099).[1]
 
 
 9
 The issue arose once again in Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). In that case, a state board had granted a worker's compensation award to an employee; under state law, the employer's insurance company could contest such an award in a trial de novo. When the employer's insurance company sought to proceed with this trial in federal district court, the employee contended the district court was without jurisdiction because the action was an appeal from a state agency. The Court determined that the federal district court had jurisdiction only after finding that the trial there was not an appellate proceeding: "The suit to set aside an award of the board is in fact a suit, not an appeal.... [T]he trial in court is not an appellate proceeding. It is a trial de novo wholly without reference to what may have been decided by the Board." Id. at 354-55, 81 S.Ct. at 1574 (quotation omitted).[2]
 
 
 10
 The courts of appeals, with one exception, have consistently followed the Supreme Court and held that federal district courts are without jurisdiction to review on appeal findings of state agencies. The Tenth Circuit addressed the issue most comprehensively in Trapp v. Goetz, 373 F.2d 380 (10th Cir.1966), where a claimant asked a federal district court, in its diversity jurisdiction, to review a state agency's finding that she was not eligible for pension benefits. Citing Burford and Stude, the court stated: "[T]he United States District Court had no power to consider an appeal from the state administrative tribunal. Such a proceeding is not within its statutory jurisdiction." Id. at 383. See also FSK Drug Corp. v. Perales, 960 F.2d 6, 11 (2d Cir.1992) ("This Court lacks jurisdiction to hear [appellant's] claim that the [state agency's] substantive decision was arbitrary and capricious."); Shell Oil Co. v. Train, 585 F.2d 408, 414-15 (9th Cir.1978) (holding that federal district court was without jurisdiction to review state agency denial of environmental permit); Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd., 454 F.2d 38, 42 (1st Cir.1972) ("To the extent that the federal district court would treat a case removed from the [state court] as a review of a[ ] [state] administrative decision ..., this would place a federal court in an improper posture vis-a-vis a non-federal agency.") (citing Stude ); cf. Frison v. Franklin County Bd. of Educ., 596 F.2d 1192, 1194 (4th Cir.1979) ("[T]he [district] court should have declined pendent jurisdiction over this state law claim because it is essentially a petition for judicial review of state administrative action rather than a distinct claim for relief."). Only the Eighth Circuit, in Range Oil Supply Co. v. Chicago, Rock Island & Pac. R.R. Co., 248 F.2d 477 (8th Cir.1957), failed to follow the Supreme Court on this issue and held that a federal district court may, under its diversity jurisdiction, review on appeal the findings of a state agency. Id. at 479. Significantly, the Range Oil court did not consider that the diversity statute vests only "original" and not "appellate" jurisdiction in the district courts. See Stude, 346 U.S. at 581, 74 S.Ct. at 295; Burford, 319 U.S. at 317, 63 S.Ct. at 1099.
 
 
 11
 In the case at bar, the federal district court, in its diversity jurisdiction, reviewed the Fairfax County Executive's finding that the Housing Authority had not fully compensated Schlosser under the parties' construction contract. The district court performed this review under Virginia's "Administrative appeals procedure" set forth in Va.Code Sec. 11-71, which provides for "judicial review" of the County Executive's decision. In this review:
 
 
 12
 the findings of fact shall be final and conclusive and shall not be set aside unless the same are fraudulent or arbitrary or capricious, or so grossly erroneous as to imply bad faith. No determination on an issue of law shall be final if appropriate legal action is instituted in a timely manner.
 
 
 13
 Va.Code Ann. Sec. 11-71. The district court entered judgment in the amount awarded by the County Executive after determining that the County Executive's finding was not arbitrary and capricious. Because the district court is "a court of original jurisdiction," not "an appellate tribunal," Stude, 346 U.S. at 581, 74 S.Ct. at 295; Burford, 319 U.S. at 317, 63 S.Ct. at 1099, and, thus, is without jurisdiction "to review on appeal action taken administratively or judicially in a state proceeding," Stude, 346 U.S. at 581, 74 S.Ct. at 295, it was without jurisdiction to conduct such a review of the County Executive's finding. We, therefore, reverse the district court's order affirming the County Executive's decision and remand for the district court to further remand the case to Virginia Circuit Court, which properly has jurisdiction over the appeal from the County Executive.
 
 
 14
 Before concluding, we will respond to the points raised in the dissenting opinion. Initially, the dissent contends that the review procedure set forth in section 11-71 is a de novo trial, citing Cross v. United States, 512 F.2d 1212 (4th Cir.1975), and ALCOA v. EPA, 663 F.2d 499 (4th Cir.1981), and concludes, therefore, that the district court had jurisdiction to conduct this review procedure under Stude. Post at 159-160. We disagree that a review procedure under which factual findings are conclusive unless found to be fraudulent, arbitrary or capricious, or so grossly erroneous as to imply bad faith can be fairly characterized as a de novo trial.
 
 
 15
 Neither Cross nor ALCOA supports the dissent's contention. We held in Cross that the procedure provided in the federal Food Stamp Act to review food stamp disqualification decisions of a federal agency, under which the party challenging the agency decision was entitled to a "trial de novo " in district court to determine "the validity of the questioned administrative action," required that the district court review the agency's decision about the length of the disqualification under the "arbitrary and capricious" standard and review the agency's decision about the fact of the violation under a "broad[er]" standard. Cross, 512 F.2d at 1218. Cross did not find that review under the "arbitrary and capricious" standard is equivalent to a trial de novo--had it so found, it would have determined that the district court's review of the agency's decision about the fact of the violation was under this standard rather than a broader one. ALCOA, which states that a " 'de novo determination' ... does not necessarily mean a de novo hearing," ALCOA, 663 F.2d at 502, provides no better assistance for the dissent. Even if Stude would permit a federal district court to make, without a de novo hearing, a de novo determination of an issue previously decided by a state agency, that would have no relevance here where the district court was not asked to make a de novo determination of the parties' contract dispute but to review the state agency's determination of this dispute under an "arbitrary or capricious" standard.
 
 
 16
 Alternatively, the dissent asserts that we should refuse to follow the Supreme Court's holding in Stude that a federal district court may not review on appeal the state law findings of a state agency. Post at 160-163. To support this assertion, it states that the Supreme Court has never followed Stude, post at 160, that Stude is contrary to the Court's earlier decisions in Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462 (1905), and Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), post at 161, that Stude was incorrectly decided because appeals from state agencies are "civil actions" that are within a federal district court's diversity jurisdiction, post at 161-162, and that Stude is unwise as a policy matter because it allows states to divest federal courts of jurisdiction and discourages parties from utilizing state administrative procedures, post at 162. While the Supreme Court has never had occasion to follow its holding in Stude that federal district courts may not review on appeal the state law findings of a state agency, however, it has stated this holding as the law on at least two other occasions in Horton and Burford, see supra. And Stude is not contrary to either Madisonville Traction, which, similar to Horton, held that a federal court has jurisdiction to conduct a de novo jury trial on issues previously decided by a state agency, Madisonville Traction, 196 U.S. at 242, 25 S.Ct. at 252, or to Guaranty Trust, which held that a federal court in a diversity suit must apply the state statute of limitations, Guaranty Trust, 326 U.S. at 112, 65 S.Ct. at 1471.[3] Most importantly, even if the rule set forth in Stude was contrary to the Supreme Court's prior decisions and has not been stated subsequently by the Court, we cannot simply ignore it because we believe that Stude was incorrectly decided and is unwise as a policy matter. Stude has never been overruled by the Supreme Court either explicitly or implicitly and, at least until the Court directs to the contrary, we are bound to follow it.
 
 III.
 
 17
 For the reasons, we reverse the district court's order and remand with the instructions set forth above.
 
 
 18
 REVERSED AND REMANDED.
 
 WIDENER, Circuit Judge, dissenting:
 
 19
 I respectfully dissent, because I believe that the County Executive's decision at issue in this case was reviewable de novo by the district court and that even if this was not a de novo review, the federal courts should be permitted to sit in a case such as this in diversity review of state administrative decisions.
 
 I.
 
 20
 The majority recognizes that if the provisions of Virginia law at issue in this case permitted de novo judicial review of the agency's decision, the district court would have jurisdiction of the action in diversity. But at the same time it fails to recognize that we have defined de novo so as to require the very review it now denies.
 
 
 21
 In Cross v. United States, 512 F.2d 1212 (4th Cir.1975) (en banc), this court construed the Food Stamp Act, 7 U.S.C. Sec. 2022(c) (now Sec. 2023(a)), which provides for "a trial de novo by the court" in review of a food-stamp-disqualification decision of the Food Stamp Review Office to "determine the validity of the questioned administrative action." The en banc court, in both majority and dissenting opinions, held, on the same issue as here, "the scope of judicial review," 512 F.2d at 1217, that our de novo review of the administrative decision was whether the Secretary had "abused his discretion by acting arbitrarily," "on the de novo record as a whole." 512 F.2d at 1218. See also Alcoa v. United States EPA, 663 F.2d 499, 502 (4th Cir.1981) (holding that under the various provisions of 28 U.S.C. Sec. 636, which requires a district court to review a magistrate judge's findings and recommendations de novo, in the light of the legislative history of the Act, a de novo determination "does not necessarily mean a de novo hearing.... Rather, the judge is to make 'his own determination on the basis of [the] ... record [developed before the magistrate], without being bound to adopt the findings and conclusions of the Magistrate.' ") (alterations in original).
 
 
 22
 Thus, I am of opinion that the level of review at issue in this case is indistinguishable from that level of review provided in Cross, which was indisputably de novo as required by Section 2022. Accordingly, I believe that this case falls within the Horton exception to the rule of Stude and that the district court had jurisdiction under Horton to review the County Executive's decision, because the level of review provided by Section 11-71 is essentially the same as we have defined a de novo review of an administrative decision in Cross.
 
 
 23
 Holding that de novo has a different meaning in this diversity case from the meaning the en banc court has placed on the same words in a federal-question case is hardly even-handed, I suggest.
 
 II.
 
 24
 Even aside from the en banc court's definition of de novo, I am of opinion that the district court properly exercised its diversity jurisdiction over the dispute, because the district court was exercising its original jurisdiction over a controversy between citizens of different States in which the amount in controversy exceeded $50,000.
 
 
 25
 The Supreme Court has never followed the holding of Stude, as depended upon by the majority, either before or since.[1] Burford, cited by the majority, established the doctrine of abstention in equity from the enjoining of State administrative orders; its language regarding federal review of State administrative proceedings is dictum. Horton, although citing Stude, distinguished that case. Finally, in County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 195, 79 S.Ct. 1060, 1066-67, 3 L.Ed.2d 1163 (1959), the Supreme Court interpreted Stude to stand for the proposition that, "the defendant in [a condemnation] proceeding could remove in accordance with Sec. 1441 and obtain a federal adjudication of the issues involved."
 
 
 26
 The Supreme Court in Stude did not even cite, much less overrule, Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462 (1905), which is directly contrary to the holding of Stude. See 196 U.S. at 246, 25 S.Ct. at 253-54 ("The case, as made in the county court, was, beyond question, a judicial proceeding."); 196 U.S. at 250-51, 25 S.Ct. at 255 ("We cannot doubt, in view of the authorities, that the case presented in the county court was a 'suit' or 'controversy between citizens of different states,' within the meaning of the Constitution and the laws of the United States."). In Madisonville Traction, the Court stated that the Judicial Power Clause of the Constitution, U.S. Const. art. III, sec. 2, cl. 1, permits the federal courts to hear any case "to the full extent of the Constitution, laws, and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it." Madisonville Traction, 196 U.S. at 246, 25 S.Ct. at 254; see Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945) ("[A] federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is, for that purpose, in effect, ... another court of the State ...."); see also 14A Wright, Miller & Cooper, Federal Practice & Procedure Sec. 3721, at 205-07 & n. 65 ("An appeal to a state court from an administrative agency may be in the form of a civil action and therefore be removable."). It is evident that this case, upon reaching the state court, "assume[d] such a form that the judicial power [wa]s capable of acting on it," because under 28 U.S.C. Sec. 1332, there was diversity of citizenship and more than $50,000 in controversy.
 
 
 27
 The majority cites Stude for the proposition that under the circumstances of this case, the litigation in the district court was not in the nature of "original jurisdiction," and thus that Section 1332 does not permit the federal courts to exercise their jurisdiction over such cases. I doubt that Stude justifies such a conclusion.
 
 
 28
 It is clear to me that the state court was exercising original jurisdiction in this case. As the court in Madisonville Traction found, the dispute did not become a civil action subject to any jurisdictional analysis until the complaint was filed in the state court, whether styled an appeal from an administrative determination or not. At that point, it is clear that the state court was exercising original jurisdiction, because no other court had yet exercised jurisdiction over the dispute.[2] ,[3]
 
 
 29
 The majority quotes Stude for the proposition that "[a] state 'legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal.' " Op. at 157. I do not believe that this is the result of federal review of state administrative proceedings. As I have argued, in such cases the district court does not exercise appellate jurisdiction but original jurisdiction with only the extent of the review subject to some limitations. In any setting, however, I am more concerned with the fact that the majority's construction of Stude allows a state legislature, merely by limiting the scope of judicial review of administrative proceedings, to divest the federal courts of diversity jurisdiction over such disputes. This appears contrary to the intent of Section 1332. The power of a State to make unavailable any federal review whatsoever is, to my mind, a much more serious encroachment on federal jurisdiction than the power to limit the scope of that review to a greater or lesser extent. Along the same line, the destructive effect of the majority's decision is shown by the case of W.M. Schlosser Co., Inc. v. Fairfax County, 975 F.2d 1075 (4th Cir.1992), which this same case is a part of on its first trip through this court. In the case involved in Part II of that opinion, as explained on page 1077 of the report, Schlosser had brought its action in the district court without exhausting its administrative remedies, but Virginia law provided that in such cases administrative remedies need not have been exhausted, so we permitted the case to proceed. Even the majority will concede that was proper. In the instant case, in which the contractor did resort to administrative remedies, which was an obvious and immense help to any court, state or federal, in compiling the record, and especially so in such cases arising out of construction contracts, the contractor is paid by a denial of its judicial review by a diversity court. Certainly the majority decision does not lend itself to encourage litigants to avail themselves of administrative remedies and thus avoid litigation.[4]
 
 
 30
 I believe that the district court would have had original jurisdiction over this case in the same manner as would the courts of the State, in line with Madisonville Traction and Guaranty Trust, and that the removal was appropriate. Professor Wright essentially recommends that the holding of Stude be limited to condemnation cases, see 12 Wright & Miller Sec. 3055, at 154-56 & n. 64; see also Young, Federal Court Abstention and State Administrative Law from Burford to Ankenbrandt: Fifty Years of Judicial Federalism Under Burford v. Sun Oil Co. and Kindred Doctrines, 42 DePaul L.Rev. 859, 949 n. 479 (1993) ("From time to time, the Supreme Court has taken th[e] position [that a federal court cannot hear what might be characterized as an appeal from a state administrative decision].... See, e.g, [ Stude ]. This, however, is an indefensible rationale (or absence of rationale) only erratically endorsed by the Court."), and I would do the same. I would follow the holding in Madisonville Traction, which is inconsistent with Stude and rests on sounder logic, and would address the district court's decision on the merits.
 
 
 31
 In conclusion, I am of opinion that whether we follow our own en banc decision in Cross as to the meaning of de novo, or whether we follow Madisonville Traction and Guaranty Trust, the district court properly exercised its diversity and removal jurisdiction in reviewing this dispute.
 
 
 32
 I further suggest that the action of the majority is Rule 12 run riot. With Stude and Madisonville Traction from which to choose, the parties having made no objection, the majority, on its own account, has chosen Stude.
 
 
 33
 I agree with Professor Wright's suggestion, that Stude should be limited to condemnation cases, and with Professor Young, that the majority's construction of Stude is an indefensible rationale only erratically endorsed by the Court. So I would follow Madisonville Traction and Guaranty Trust, and for that reason, I respectfully dissent.[5]
 
 
 
 [1]
 Stude involved an appeal of two separate actions. A complete analysis of the Court's holding in Stude requires that we mention the Supreme Court's treatment of both actions
 As we indicated, a state agency had assessed condemnation damages owed by a railroad to a landowner; to contest this assessment, the railroad pursued two avenues. First, as we discussed, it filed a complaint in the federal district court asking the district court to review the state agency's damages assessment. The Supreme Court found that the district court was without jurisdiction to conduct such a review because the district court "does not sit to review on appeal action taken administratively or judicially in a state proceeding." Id. at 581, 74 S.Ct. at 295.
 Second, the railroad appealed the state agency's assessment of condemnation damages under the procedure established by the state for administrative appeals. Under this procedure, the losing party before the state agency appeals to state court, and the party's case is "tried [by the state court] as in an action by ordinary proceedings," id. at 576, 74 S.Ct. at 292 (quoting Iowa Code Sec. 472.21 (1950)). The railroad filed a notice of appeal seeking this de novo trial of its case in state court; it then attempted to remove this trial to federal court. The Supreme Court found that this de novo trial was "in its nature a civil action and subject to removal by the defendant to the United States District Court," id. at 578-79, 74 S.Ct. at 294, but determined that removal by the railroad was improper because the railroad was not a defendant.
 The Court's holding on this second issue that the federal district court would have had jurisdiction over this removed case had it been removed by the defendant does not affect our analysis here. The removed case did not seek a review by the district court of the state agency's condemnation assessment, but a de novo proceeding "tried [by the state court] as in an action by ordinary proceedings," id. at 576, 74 S.Ct. at 293 (quoting Iowa Code Sec. 472.21 (1950)). See note 2 infra.
 
 
 [2]
 The Supreme Court in several older cases similarly found that federal district courts had jurisdiction over certain "appeals" from state agencies when these "appeals" were by trial de novo, and, thus, did not involve review of the state agencies' findings. See, e.g., City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 30, 54 S.Ct. 259, 261, 78 L.Ed. 628 (1934); Commissioners of Road Improvement v. St. Louis Southwestern Ry. Co., 257 U.S. 547, 556, 42 S.Ct. 250, 253, 66 L.Ed. 364 (1922); Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 406-07, 25 L.Ed. 206 (1878)
 
 
 [3]
 The dissent also states that this Court and one other court of appeals have not followed Stude 's holding, citing Rowland v. Patterson, 882 F.2d 97 (4th Cir.1989), Davison v. Sinai Hosp., 617 F.2d 361 (4th Cir.1980), aff'g, 462 F.Supp. 778 (D.Md.1978), and Woods v. Holy Cross Hosp., 591 F.2d 1164 (5th Cir.1979). Each of these cases involved state procedures for medical malpractice claims under which claimants must exhaust state arbitration or mediation mechanisms before they are entitled to trials de novo by juries in state or federal court. In these trials, the findings of the arbitrators and mediators are admissible. These cases do not conflict with Stude because federal district courts are not reviewing on appeal the findings of state agencies when they conduct such de novo jury trials, even if the arbitration or mediation findings are admitted as evidence in these trials. Even if they did conflict with Stude, none of these cases even raised the Stude issue and they should not affect our analysis
 
 
 [1]
 Stude 's prohibition against federal appellate review of state administrative determinations has never been applied by this court, either. In fact, this court has effectively reviewed state administrative determinations on a number of occasions, even where the level of review was less-than-plenary, if required by Horton. See, e.g., Rowland v. Patterson, 882 F.2d 97, 98 (4th Cir.1989) (upholding jurisdiction in diversity to review the malpractice decision of the Maryland Health Care Arbitration Office (HCAO), which decision is by statute presumptively correct); Davison v. Sinai Hosp., 462 F.Supp. 778, 779 (D.Md.1978) (same), aff'd, 617 F.2d 361 (4th Cir.1980); see also Woods v. Holy Cross Hosp., 591 F.2d 1164, 1168-72 (5th Cir.1979) (reviewing the treatment by the federal courts of state statutory malpractice procedures similar to Maryland's, and concluding that such a procedure must be applied in diversity). The level of judicial review at issue in this case is materially indistinguishable from the level of review provided for decisions of the Maryland HCAO. Dismissing the instant litigation on the basis of Stude, therefore, calls into question many cases wherein we have reviewed state administrative determinations in diversity
 
 
 [2]
 I note that it appears under the majority's reasoning that the case was improperly removed because Schlosser, the claimant before the County Executive, was under the majority's reasoning the plaintiff in this case, since the majority finds that the case originated at the County Executive level. Thus, the majority's reasoning creates the anomalous result that administrative claims against a governmental unit, even where judicial review is de novo under the majority definition here, and thus federal jurisdiction is proper under Horton, will never be subject to removal by a claimant but will always be subject to federal review at the instance of a governmental entity. Again, hardly even-handed
 Under my reasoning, the case did not begin until the complaint was filed originally in the state court, and thus Schlosser was properly the defendant and entitled to remove. Moreover, under my reasoning, any party hailed into state court would be entitled to the benefit of removal, provided the other jurisdictional prerequisites are met. This result seems much more consistent with the purposes of removal jurisdiction.
 In any event, any invalid removal was waived by the Authority's failure to move for remand within thirty days of removal. See 28 U.S.C. Sec. 1447(c).
 
 
 [3]
 Black's Law Dictionary defines jurisdiction as "embrac[ing] every kind of judicial action. .... It is the authority by which courts and judicial officers take cognizance of and decide cases .... [or] the legal right by which judges exercise their authority." (emphasis added). Jurisdiction is, quite literally, the power of a judge to decide. It defies logic to find otherwise than that original jurisdiction rests in the first judicial tribunal to confront a dispute, and I believe that this is precisely what the majority, in its construction of Stude, has done
 
 
 [4]
 Although the majority cites several court of appeals decisions as following Stude 's prohibition on federal review of state agency determinations, none of those decisions is on point. In Trapp v. Goetz, 373 F.2d 380 (10th Cir.1967), the only cited court of appeals decision to discuss this holding of Stude, the Kansas legislature had provided no mechanism for state-court review of a determination of the Board of Trustees of the Firemen's Pension Fund, see 373 F.2d at 382, and thus the only original jurisdiction available in the state courts was in the form of a writ of mandamus. Moreover, the discussion of Stude in Trapp was dictum, since the court there found that there was no decision of the Board of Trustees for any court to review. See 373 F.2d at 382
 None of the other cases cited by the majority followed the holding of Stude, and none in any event was on facts similar to those before us in the instant case. See FSK Drug Corp. v. Perales, 960 F.2d 6 (2d Cir.1992) (rejecting an Equal Protection challenge to a decision of the New York State Department of Social Services denying re-enrollment to a Medicaid provider, and holding that "[a] Section 1983 action is not an appropriate vehicle to consider whether a state or local administrative determination was arbitrary or capricious." 960 F.2d at 11); Frison v. Franklin Cty. Bd. of Educ., 596 F.2d 1192 (4th Cir.1979) (holding that a demotion decision of a North Carolina school board did not violate Equal Protection or Due Process Clauses, and finding no pendent jurisdiction over the substance of the decision); Shell Oil Co. v. Train, 585 F.2d 408 (9th Cir.1978) (affirming the dismissal of a complaint against the EPA alleging that EPA controlled a state agency's action in denying a pollution discharge permit so that the action was effectively a federal agency decision reviewable under federal law); Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Board, 454 F.2d 38 (1st Cir.1972) (holding that the Puerto Rico Labor Relations Board is a court for removal purposes).
 
 
 [5]
 The majority states that the dissent "stat[es]" that Stude "was incorrectly decided" and that Stude is "unwise as a policy matter." An examination of the dissenting opinion, however, does not disclose the use of the word "incorrectly" or "unwise" referring to Stude. The use of that adverb and adjective when referring to the Supreme Court's opinion is entirely that of the majority