**Albert REICH, Plaintiff-Appellant,**

v.

**CITY OF FREEPORT, an Illinois Municipal Corporation, et al., Defendants-Appellees.**

**No. 75–1027.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1975.

Decided Dec. 24, 1975.

Rehearing Denied Jan. 29, 1976.

Howard H. Prestwich, Freeport, Ill., for plaintiff-appellant.

George S. Dzielak, Woodruff A. Burt, Freeport, Ill., for defendants-appellees.

Before STEVENS, Circuit Justice,* SPRECHER, Circuit Judge, and GRANT, Senior District Judge.**

PER CURIAM.

This action was brought by a former policeman of the City of Freeport, Illinois, alleging (1) that certain municipal ordinances were unconstitutional as violations of the First Amendment; (2) that the ordinance prescribing the procedure to be followed by the Board of Police and Fire Commissioners in deciding whether to discharge a policeman for cause is unconstitutional as a violation of Due Process, and (3) that the plaintiff's discharge from the force was in violation of his due process rights both because of procedural defects and because it was based in part on his violation of a statute found to be void as in conflict with the Illinois Constitution. The District Court dismissed the complaint, and the plaintiff appealed.

We do not reach the merits on any of the claims, as plaintiff does not have standing to attack the ordinances except insofar as they were applied to him in his discharge, and, as to his discharge, all the claims have been heard and determined by the Illinois State Courts. We have no power to review the final decision of the state court.

The following facts, drawn from the record, are undisputed. On January 7, 1971, while Mr. Reich (the plaintiff) was walking his beat in downtown Freeport, he received a radio call instructing him to report to the Balz Travel Agency. When he arrived, he found two members of the Freeport Board of Fire and Police Commissioners and the Freeport Chief of Police. The three men appeared to have been in conference for some time. Mr. Balz informed Reich that he had "heard bad things" about him, but refused to detail what they were and would not allow Mr. Reich to look at a "thick file" which was lying on the desk. The three men then attempted for half an hour to convince Reich to resign.[1]

When Mr. Reich refused to resign, a formal hearing was held at which Mr.

---

* Mr. Justice Stevens participated initially as Circuit Judge; on and after December 19, 1975 he participated as Circuit Justice.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. The procedure for discipline by the Commission is governed by City Ordinance 15–127, the relevant part of which reads:

"15–127 DISCIPLINE AND PROCEDURE ON CHARGES. Disciplinary action shall be taken by, and before, the Commission in accordance with the rules hereinafter set forth. 15–127–3 Upon receipt of a report or a complaint the Commission shall tentatively determine the penalty, if any, appropriate to the violation or offense, and may call the accused member before it, inform him of the report or complaint, and advise him that he may waive hearing, plead guilty and accept the proposed penalty. The accused may refuse to plead guilty, and he shall not in any way be prejudiced by such refusal. In the event of a subsequent hearing, the Commission shall not be limited by the previously proposed penalty. If the accused pleads guilty, the Commission shall impose the proposed penalty and no subsequent charges based upon the same report or complaint shall be brought."

Reich was charged with five counts.[2] After the hearing, the Board ordered that Reich should be discharged. Following the procedures of the Illinois Administrative Review Act,[3] Reich had judicial review of the Board's action in the Circuit Court of Stephenson County. The Circuit Court found the Board's action to be justified, and this judgment was affirmed by the Illinois Appellate Court.[4] Mr. Reich then filed this action in the District Court for the Northern District of Illinois.

## I.

■ The District Court properly had jurisdiction of this case founded on 28 U.S.C. § 1331, general federal question jurisdiction, since the complaint alleged that certain ordinances and procedures were in conflict with the United States Constitution and since the amount in controversy exceeded $10,000. Since this is so, it is immaterial that jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, also alleged by the plaintiff, did

not exist against the defendant City of Freeport and may not exist against the defendant Board of Fire and Police Commissioners.[5]

## II.

■ The plaintiff's position as a citizen and taxpayer of the City of Freeport does not give him standing to attack the ordinances here involved.[6]

■ The doctrine of "standing" has its roots both in Article III of the Constitution and in certain discretionary considerations which go to the question of the *justiciability* of a particular controversy—whether or not a certain question can properly be decided by a court. It is because these latter considerations can vary that much of the confusion exists in the standing doctrine. But underlying every question of standing is the Constitutional requirement that there be a real "case or controversy" sufficient to provide that degree of adversariness which is necessary for a court to decide the case properly. *Baker v. Carr,* 369 U.S.

2. Charge I related to statements of an obscene and derogatory nature allegedly made by Patrolman Reich about his fellow officers.

Charge II alleged that Reich had left his post without authorization.

Charges III alleged that Reich had possessed a quantity of marijuana which he returned to the seller rather than turning it over to the police department.

Charge IV alleged that Reich gave information about police department business to the Illinois Bureau of Investigation without the approval of his superior officer.

Charge V alleged that Reich had failed to go to the aid of a fellow officer when needed.

The Board determined that all of the charges were justified except for number V.

3. S.H.A. ch. 110, §§ 264–279.

4. *Reich v. Board of Fire and Police Commissioners,* 13 Ill.App.3d 1031, 301 N.E.2d 501 (2d Dist., 1973).

5. The Supreme Court in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, and *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, held that "municipal corporations" are not "persons" within the meaning of 42 U.S.C. § 1983. The City of Freeport is clearly a municipal corporation. We need not decide in this case whether the District Court was correct in holding that the same

rule would apply to the Board of Fire and Police Commissioners.

6. The plaintiff attacks these ordinances as unconstitutional as restricting the right of free speech and as being overbroad:

"15–114–3 Not give information relating department business to a noncity official without the approval of a superior officer.
15–114–7 Not discuss or criticize other members, or any official of the City, except when required by a superior officer.
15–125 OFFENSES. Acts subject to penalty are:
15–125–13 Insubordination or disrespect toward a superior officer, or toward any official of the city.
15–125–14 Using coarse, profane or insolent language."

These ordinances are attacked as being overbroad:

"15–114 GENERAL RIGHTS AND DUTIES: a member of the police department shall:
15–114–1 Study and know the traffic, criminal and regulatory statutes and ordinances, and use his best efforts to enforce them.
15–125 Offenses. Acts subject to penalty are:
15–125–6 Neglect of duty."

The ordinance quoted in n. 1, *supra,* is attacked as violating the plaintiff's right to procedural due process.

186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663. And it is of the essence of this question to ask whether the plaintiff, as he comes into court, has in fact been injured by the conduct he challenges.[7] *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636. There are two interests which Mr. Reich might assert, the first as a citizen, and the second as a taxpayer. His interest as a citizen lies in having every member of the local police department free to criticize other members of the department so that the department can be improved. This interest would relate, of course, only to those ordinances relating to speech. The second interest, as a taxpayer, is to avoid having his tax monies spent in enforcing an unconstitutional ordinance. Both of these interests exist; however, in the circumstances of this case, neither is sufficiently immediate to give plaintiff standing to attack these ordinances.

■ In *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, the Supreme Court recognized the standing of federal income tax payers to challenge the use of federal funds to support instructional activities and · materials in religious schools. The Court carefully limited its holding in that case, however, to attacks on the use by Congress of its general power to tax and spend for the general welfare, where the use is allegedly in violation of a specific restriction imposed on Congress by the Constitution—in *Flast,* the First Amendment prohibition against the establishment of religion. The Court specifically noted that there was no logical nexus between the taxpayer status and the "incidental expenditure of tax funds in the administration of an essentially regulatory statute."

392 U.S. at 102, 88 S.Ct. at 1954. The Freeport ordinances here in issue are exercises of regulatory rather than spending power;[8] thus, Mr. Reich's position is very similar to the position of the plaintiff in *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678, where the Court held that a federal taxpayer did not have standing to challenge the constitutionality of the Central Intelligence Agency Act on the ground that it violated Art. I, § 9, cl. 7 of the Constitution, which requires a regular statement and account of the use of all public funds. In *Richardson,* the Court reaffirmed the principle that a taxpayer may not use " 'a federal court as a forum in which to air his generalized grievances about the conduct of government . . . .' " 418 U.S. at 173, 94 S.Ct. at 2945.

■ What then of Mr. Reich's general interest as a citizen? The Supreme Court has never found the generalized interest of a citizen to be sufficient to confer standing. *See, e. g., Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636. This has been true even where a more "direct" injury could be shown than the plaintiff can show in this case.[9]

Thus, Mr. Reich has no standing as citizen or taxpayer to attack these ordinances.

### III.

■ Plaintiff has also asked "that this court issue a declaratory judgment ordering and declaring the order of the Board of Fire and Police Commissioners . . . discharging Albert Reich from his position as patrolman, null and void and without effect . . . and fur-

---

7. We are, of course, considering here only whether Mr. Reich has standing as a citizen and taxpayer of the City of Freeport. Dismissal of his complaint as a former patrolman rests on quite different grounds.

8. Because there is essentially no nexus between Mr. Reich's status as a taxpayer and the incidence of these ordinances, the distinction between federal and municipal taxpayers drawn in *Forthingham v. Mellon,* 262 U.S. 447,

43 S.Ct. 597, 67 L.Ed. 1078, is here irrelevant. An injunction against the enforcement of these ordinances would not affect Mr. Reich's taxes.

9. *See, e. g., Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536, where the Court ruled that an unwed mother had no standing to seek an injunction against a prosecutor's refusal to institute criminal nonsupport proceedings against her child's father.

ther order said Defendants to reinstate Albert Reich to his position as a patrolman and to pay him his back pay and benefits." He asks that this be done on the ground that he was discharged without due process of law in that (1) the Board was not a fair tribunal as it had prejudged his case, and (2) the discharge was based on certain unconstitutional statutes. See n. 6, *supra*. As the District Court recognized, there may be merit in some of the plaintiff's constitutional claims. However, plaintiff has already once litigated these claims and is barred by principles of *res judicata* from doing so again. *Cf. Thistlethwaite v. City of New York,* 497 F.2d 339 (2d Cir. 1974). His federal constitutional claims were unreservedly placed in issue before the Illinois court, he was given a fair opportunity to litigate these claims in that court, and the state court ruled upon them; he therefore cannot now ask a federal court to reexamine the merits of the state court's determination. *Cf. England v. State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

Plaintiff raised and argued before the State courts the very points which he argues here.[10] However, he attempts to avoid the collateral estoppel effect by arguing (1) that the State courts were unable to consider these constitutional objections because of certain limitations in the Illinois Administrative Review Act,[11] and (2) that the State courts did not have jurisdiction. We consider these arguments in turn.

█ In deciding whether or not collateral estoppel effect should be given to this State court judgment, we must ask, first, whether the State court had power to consider the constitutional claims, and, second, whether it in fact did so. Illinois law seems clear that the court did have such power. An Illinois court has a

duty, under the Administrative Review Act, to ensure that due process was afforded in the administrative hearing. *Lavin v. Civil Service Commission,* 18 Ill. App.3d 982, 310 N.E.2d 858 (1st Dist. 1974); *Garces v. Dept. of Registration and Education,* 118 Ill.App.2d 206, 254 N.E.2d 622 (1st Dist. 1969). The scope of review, under the Administrative Review Act, extends to "all questions of law and of fact presented by the entire record before the court." S.H.A. ch. 110, § 274. Plaintiff's charges of constitutional violations did appear in the administrative record;[12] if the court thought that more evidence was necessary to determine the constitutional claims, it had power to remand the case to the agency for further evidence. S.H.A. ch. 110, § 275(1)(g); *Sanderson v. DeKalb County Zoning Board of Appeals,* 24 Ill.App.3d 107, 320 N.E.2d 54 (2d Dist. 1974). Thus, the State courts could have considered the constitutional claims presented to them by plaintiff.

█ Did the courts in fact do so? Plaintiff claims they did not, relying on a passage in which the Appellate Court stated, "we, therefore, consider the points raised on appeal only in their application to certain violations contained in the third charge." 13 Ill.App.3d at 1033, 301 N.E.2d at 503. The point of the court's statement, however, was that since a finding of guilty on any one of the charges would sustain the order of dismissal, it was not necessary for the court to determine the validity of the findings on the other charges. To sustain the finding on the third charge, the court was required to, and did, find (1) that plaintiff had received a hearing which accorded with the requirements of due process, (2) that the Board's findings were not against the manifest weight of the evidence, and (3) that it was immaterial that the law which plaintiff was said

10. See Pl. Brief at 10–11. This conclusion is not disputed and is supported by the record of the proceedings before the Illinois courts.

11. N. 3, *supra.*

12. For example, plaintiff's affidavit detailing the attempt by Police Chief Cowan and Board members Balz and Miller to convince him to resign was presented to the Board and was thus in the record before the State court.

to have contravened had later been declared to be unconstitutional by the Illinois Supreme Court.[13] 13 Ill.App.3d at 1035–1036, 301 N.E.2d 501.

Although the Illinois courts did not decide the First Amendment questions implicit in the other charges, those questions are (since plaintiff's discharge can be upheld on Charge III alone) now moot as to Mr. Reich in his position as a police officer. *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164. And, as we have noted above, Mr. Reich's position as a citizen and taxpayer does not give him standing to complain.

The plaintiff has also argued that the Illinois courts did not have jurisdiction to review his dismissal because the Administrative Review Act requires that the "entire record" be placed before the court, and no transcript of the January 7 meeting of the Balz Travel Agency was included. However, it is clear from the record before us that no transcript of the meeting could be produced as it was not recorded. Plaintiff does not contend that the Administrative Review Act, which gave the state court its jurisdiction, required that such a transcript be kept.

The District Court was therefore correct in dismissing the complaint.

---

13. The actual Charge III against plaintiff was that he had violated sections 15–114–1, 15–125–6, 15–125–7, 15–125–18 and 15–125–24 of Chapter 15 of the Freeport Municipal Code, in particular, section 15–125–7. " . . . violation of any criminal law . . . ." The underlying criminal statute, Ill.Rev.Stat.1969, ch. 38, sec. 22–3, was held unconstitutional in *People v. McCabe,* 49 Ill.2d 338, 275 N.E.2d

407 (1971). The Illinois Appellate ·Court in this case determined that as a matter of "law enforcement and police discipline," during the period before the statute was *declared* to be unconstitutional, "it was plaintiff's duty as a police officer to enforce the statute, it then being an operative fact." 13 Ill.App.3d at 1035, 301 N.E.2d at 504.