91 F.3d 981
 INTERNATIONAL COLLEGE OF SURGEONS, a not-for-profit
corporation, United States Section of the International
College of Surgeons, a not-for-profit corporation, and Robin
Construction Corporation, a for-profit corporation,
Plaintiffs-Appellants,
v.
CITY OF CHICAGO, ILLINOIS, a municipal corporation, Chicago
Plan Commission, and its commissioners, Reuben L.
Hedlund, et al., Defendants-Appellees.
 Nos. 95-1293, 95-1315.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1995.
Decided Aug. 1, 1996.
 
 Richard J. Brennan (argued), Kimball R. Anderson, Darcy J. Bogenrief, Thomas C. Cronin, Winston & Strawn, Chicago, IL, David B. Love, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Daniel L. Houlihan, Houlihan & Associates, Chicago, IL, for International College of Surgeons, United States Section of the International College of Surgeons, Robin Construction Corporation in No. 95-1293.
 Lawrence Rosenthal, Sheila Owens, Benna R. Solomon, Anne K. Berleman (argued), Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago, Chicago Plan Commission, Rueben L. Hedlund, Edwin W. Myerson, Doris B. Holleb, Mary M. Langdon, George Migala, Leon D. Finney, Jr., Amrish K. Mahajan, Graham Grady, Charles Haffner, Allison S. Davis, Dorothy Rivers, E. W. Robinson, Charles Thurow, Edward M. Burke, William J.P. Banks, Luis Gutierrez, Anthony C. Laurino, Clark Burrus, Richard M. Daley in No. 95-1293.
 Thomas J. Murphy, Chicago, IL, Lawrence Rosenthal, Benna R. Solomon, Anne K. Berleman, Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for North State Astor.
 Richard J. Brennan (argued), Kimball R. Anderson, Winston & Strawn, Chicago, IL, Daniel L. Houlihan, Houlihan & Associates, Chicago, IL, for International College of Surgeons, United States Section of the International College of Surgeons, Robin Construction Corporation in No. 95-1315.
 Lawrence Rosenthal, Sheila Owens, Benna R. Solomon, Anne K. Berleman (argued), Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for City of Chicago, Commission on Chicago Landmarks, Peter C.B. Bynoe, Irving J. Martin, Thomas E. Gray, John W. Baird, Josue Gonzalez, Amy R. Hecker, David R. Mosena, Marian Despres, Charles M. Smith, Daniel W. Weil in No. 95-1315.
 Thomas J. Murphy, John Fennig, Chicago, IL, for North State Astor, Lake Shore Drive Association.
 Before BAUER and RIPPLE, Circuit Judges, and SKINNER, District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 The International College of Surgeons and the United States Section of the International College of Surgeons (collectively the "College") applied to the Commission on Chicago Historical and Architectural Landmarks (the "Landmarks Commission") for the demolition permits required to redevelop certain landmarked property on Lake Shore Drive in Chicago. The Landmarks Commission denied this application and the College's subsequent request for an economic hardship exemption. The College, alleging various federal and state constitutional grounds, challenged the Commission's decisions in separate complaints for administrative review filed in the Circuit Court of Cook County. The City of Chicago removed the complaints to federal court. The district court later granted the City's motion to dismiss certain of the College's challenges and entered summary judgment against the College on the remaining claims. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand with instructions that the case be remanded to the Circuit Court of Cook County.[1]
 
 
 2
 * BACKGROUND
 
 
 3
 The College owns two parcels of land on Lake Shore Drive in Chicago. The first parcel, located at 1516 Lake Shore Drive, is improved with a four-story mansion known as the Edward T. Blair House. The second parcel, at 1524 Lake Shore Drive, is improved with a three-story mansion known as the Eleanor Robinson Countiss House. The College uses the buildings, which are connected by a bridge that enables their use as one structure, to house administrative offices and a museum.
 
 
 4
 In July 1988, the Landmarks Commission made a preliminary determination that seven buildings on Lake Shore Drive, including the properties at issue here, met the criteria for landmark designation set out in the Chicago Landmarks Ordinance.[2] The Landmarks Commission voted to recommend to the City Council that the seven buildings receive landmark designation and, on June 28, 1989, the Chicago City Council passed the "Seven Houses on Lake Shore Drive District Ordinance" (the "Designation Ordinance") designating the landmark district.
 
 
 5
 In February 1989, before the enactment of the Designation Ordinance, the College executed a contract for the sale and redevelopment of the property. The $17 million contract, which provided for the demolition of all but the facades of the Blair and Countiss residences and the construction of a forty-one-story condominium building behind the facades, was contingent on the College's ability to obtain all the permits and approvals necessary for redevelopment of the property. Robin Construction Corporation, a developer of high-rise residential developments and one of the plaintiffs here, acquired the contract purchaser's interest later in 1989.
 
 
 6
 When the College applied for permission to demolish the buildings at 1516 and 1524 Lake Shore Drive, its applications were forwarded to the Landmarks Commission. The Commission rendered its final decision denying the College's permit requests on January 9, 1991. The College then filed its first complaint in the Circuit Court of Cook County (No. 91 CH 1361); it sought judicial review of the administrative decision to deny the permits. The defendants removed this complaint to the United States District Court for the Northern District of Illinois, where it was docketed as number 91 C 1587.
 
 
 7
 Pursuant to section 21-86 of the Landmarks Ordinance, the College also filed an application seeking an economic hardship exception to the Landmarks Commission's denial of the demolition permits. The Commission concluded that its denial of the demolition permits had not resulted in "the loss of all reasonable and beneficial use of or return from the property"--the standard that appears in the Landmark Ordinance--and denied the College's application. The College then filed its second complaint in the Circuit Court of Cook County (No. 91 CH 7289) seeking judicial review of the administrative decision to deny the economic hardship exception. Again, the defendants removed the action to federal district court, where it was docketed separately as number 91 C 5564.
 
 
 8
 Because the property also is governed by the Lake Michigan and Chicago Lakefront Protection Ordinance, the College was required to obtain approval for its proposed development under that ordinance as well. The Chicago City Council rejected the College's application for permits under the Lakefront Protection Ordinance, and the College filed a "Complaint for Declaratory Judgment and Other Relief" in the district court, where it was docketed as number 91 C 7849.
 
 
 9
 The district court consolidated the three cases and stayed case 91 C 7849--the declaratory judgment action--pending disposition of the other cases. In an order dated January 10, 1992, the court granted in part and denied in part the City's motion to dismiss cases 91 C 1587 and 91 C 5564--the complaints for administrative review. The College then filed an amended "Consolidated Complaint for Administrative Review" in the two cases, again alleging federal and state law claims. On December 30, 1994, the district court entered summary judgment in favor of the City on all of the plaintiff's claims; it thus affirmed the Landmarks Commission's decision denying the College's application for demolition permits and denying its application for an economic hardship exception. Having reached this conclusion, the court dismissed case 91 C 7849 with prejudice as moot and with leave to reinstate if the court's judgments in cases 91 C 1587 and 91 C 5564 were vacated, reversed or remanded on appeal. The College filed a notice of appeal in all three cases.
 
 II
 DISCUSSION
 
 10
 Before proceeding to the issues raised by the parties, we must determine whether the district court had subject matter jurisdiction over the claims raised in the College's complaint. The parties did not address the issue in their initial presentations to this court;[3] subject matter jurisdiction, however, cannot be waived. Courts have a duty to resolve apparent jurisdictional problems sua sponte.[4]
 
 A.
 
 11
 The College commenced the judicial proceedings in this case in the Circuit Court of Cook County. The College sought, by way of its "Complaint for Administrative Review," judicial review of the Landmarks Commission's decision to deny its application for demolition permits. The complaint was filed pursuant to the Illinois Administrative Review Act ("IARA"), see 735 ILCS 5/3-103 et seq., because the Landmarks Ordinance makes the final decision of the Commission approving or disapproving an application for a permit a "final administrative decision" appealable under the Act. See MCC § 2-120-800.[5] The College filed a second "Complaint for Administrative Review" after the Commission denied its application for an economic hardship exception. See MCC § 2-120-860.[6] The defendants sought the removal of each of these complaints to the United States District Court for the Northern District of Illinois.
 
 
 12
 Removal of "civil actions" from state court to federal court is authorized by 28 U.S.C. § 1441. The operative provision, section 1441(a), provides in relevant part:
 
 
 13
 Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
 
 
 14
 28 U.S.C. § 1441(a). Under section 1441(a), therefore, the removal jurisdiction of the district court is tied to the original jurisdiction of the federal courts; removal is proper only if the action originally could have been brought in the district court. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); Seinfeld v. Austen, 39 F.3d 761, 763 (7th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1998, 131 L.Ed.2d 1000 (1995); Frances J. v. Wright, 19 F.3d 337, 340 (7th Cir.), cert. denied,--- U.S. ----, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994). Noting the presence of federal claims, the district court concluded that it had original jurisdiction over the College's complaints under the federal question statute, 28 U.S.C. § 1331. That section confers "original jurisdiction" on the district courts with respect to "civil actions ... arising under the Constitution, laws, or treaties of the United States." Id.
 
 
 15
 Whether a state action was properly removed to federal court is a question of federal jurisdiction and, accordingly, subject to de novo review. Seinfeld, 39 F.3d at 763 (citing Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401 (9th Cir.1991), cert. denied, 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993)). The specific question we must confront is whether the College's "Complaint for Administrative Review," filed under the Illinois Administrative Review Act, is a "civil action ... of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).
 
 B.
 
 16
 We begin our analysis with the Supreme Court's decision in Chicago, Rock Island & Pacific Railroad v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954). In Stude, the Iowa State Commerce Commission had authorized a railroad to acquire the land necessary to improve its line of railway in a certain Iowa county. A state agency assessed condemnation damages against the railroad and, in order to obtain relief from this assessment, the railroad pursued two different avenues of relief. First, the railroad filed a complaint in federal district court. Invoking that court's diversity jurisdiction, the complaint asked the district court to review the agency's damage assessment. The district court granted the landowner's motion to dismiss the complaint, and the Supreme Court of the United States eventually affirmed that dismissal. The Court held that the district court was without jurisdiction to conduct a review of the state agency's ruling because "[t]he United States District Court for the Southern District of Iowa does not sit to review on appeal action taken administratively or judicially in a state proceeding." Id. at 581, 74 S.Ct. at 295. Noting that "a State legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction," the Court held that neither Congress nor the Federal Rules of Civil Procedure provided for such an appeal to the federal courts. Id. (quoting Burford v. Sun Oil Co., 319 U.S. 315, 317, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943)).[7]
 
 
 17
 As a second avenue of relief, the railroad appealed the state agency's assessment of condemnation damages to the state court using the procedure established by Iowa for administrative appeals. Under this procedure, the party aggrieved in the state agency may appeal to state court, and the case is "tried [by the state court] as in an action by ordinary proceedings." Id. at 576, 74 S.Ct. at 293 (quoting Iowa Code § 472.21 (1950)). The railroad filed a notice of appeal seeking this de novo trial in state court, and the case was docketed, in accordance with the Iowa Code, with the landowner as plaintiff and the railroad as defendant. The railroad then attempted to remove the litigation to federal court. The district court denied the landowner's motion to remand the case to state court; the Court of Appeals reversed, however, and ordered this second case remanded to the state court. The Supreme Court affirmed this decision of the Court of Appeals on the ground that, for purposes of 28 U.S.C. § 1441(a), the railroad is the plaintiff and therefore cannot remove. However, addressing the nature of the state proceeding, the Supreme Court wrote:
 
 
 18
 The proceeding before the sheriff is administrative until the appeal has been taken to the district court of the county. Then the proceeding becomes a civil action pending before those exercising judicial functions for the purpose of reviewing the question of damages. When the proceeding has reached the stage of a perfected appeal and the jurisdiction of the state district court is invoked, it then becomes in its nature a civil action and subject to removal by the defendant to the United States District Court.
 
 
 19
 Id. at 578-79, 74 S.Ct. at 294. Notably, the Court did not suggest that all agency action becomes a "civil action" upon its arrival for review in state court. Rather, the Court found the nature of the state judicial proceeding at issue in Stude to be significant. The case removed from state court to the district court was a de novo proceeding "tried [by the state court] as in an action by ordinary proceedings." Id. at 576, 74 S.Ct. at 293 (quoting Iowa Code § 472.21 (1950)).
 
 
 20
 This focus on the character of the state judicial action to determine whether or not it is a "civil action ... of which the district court has original jurisdiction" finds further support in the Supreme Court's decision in Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). In Horton, the Liberty Mutual Insurance Company contested a workman's compensation award granted to an employee by the Texas Industrial Accident Board. Texas law provided for such challenges to be made in a trial de novo, and Liberty Mutual, invoking the diversity jurisdiction of the federal district courts, filed its challenge in federal court. The Supreme Court upheld the district court's exercise of jurisdiction. Noting that the Texas Supreme Court had characterized these actions as "suits" and not "appeals," the Court wrote:
 
 
 21
 It is true that as conditions precedent to filing a suit a claim must have been filed with the Board and the Board must have made a final ruling and decision. But the trial in court is not an appellate proceeding. It is a trial de novo wholly without reference to what may have been decided by the Board.
 
 
 22
 Horton, 367 U.S. at 355, 81 S.Ct. at 1574.[8] Accordingly, the Supreme Court concluded, the district court had jurisdiction over the insurance company's action. Id.
 
 
 23
 In Stude and Horton, therefore, the Supreme Court held that the district court properly exercised removal jurisdiction over state court actions that review de novo the earlier decision of a state administrative agency. In each case, the Court emphasized that the state court action subject to removal was a de novo suit in the state court; neither action required review of the agencies' findings or determinations. Because state judicial proceedings of this sort are conducted "wholly without reference to what may have been decided by the [state agency]," id. at 354-55, 81 S.Ct. at 1574, these actions cannot be characterized as "appeals" of an agency's decision; rather, such actions are "suits" like any other civil action over which the state court exercises original jurisdiction. The teaching of Stude and Horton, therefore, is that a state judicial proceeding to conduct de novo review of a state administrative decision is a "civil action[ ] ... of which the district court has original jurisdiction" within the meaning of 28 U.S.C. § 1441(a).
 
 
 24
 The Supreme Court has not had the opportunity to decide a case in which a party had attempted to remove a state court proceeding when the state administrative review scheme provides for deferential review of a state agency's decision. However, our colleagues in other circuits have held that the district courts do not have jurisdiction to entertain such actions. The Fourth Circuit, in Fairfax County Redevelopment & Housing Authority v. W.M. Schlosser Co., 64 F.3d 155 (4th Cir.1995), examined the question of removability in the context of a Virginia statute allowing for judicial review of state administrative decisions involving public contract disputes. See Va.Code Ann. § 11-71. The case arose out of a dispute between Fairfax County and the W.M. Schlosser Company, a contractor that had contracted to build a housing project for the county. Alleging that the county had not paid it in full, the contractor brought a state administrative claim against the county. The Fairfax County Executive, to whom the claim had been brought under a Virginia administrative review scheme, determined that the county had breached the parties' contract and ordered it to pay the deficiency. The county appealed to a Virginia circuit court under Virginia Code § 11-71, and the contractor, invoking the diversity jurisdiction of the district courts, removed the county's appeal to the district court for the Eastern District of Virginia. The Fourth Circuit held that the district court did not have jurisdiction to review the County Executive's decision. After reviewing the Supreme Court's holdings in Stude and Horton, the Fourth Circuit focused its analysis on the scope of the "judicial review" afforded by the Virginia administrative review statute in question. In this review,
 
 
 25
 the findings of fact shall be final and conclusive and shall not be set aside unless the same are fraudulent or arbitrary and capricious, or so grossly erroneous as to imply bad faith. No determination on an issue of law shall be final if appropriate legal action is instituted in a timely manner.
 
 
 26
 Id. at 158 (quoting Va.Code Ann. § 11-71). Noting the deferential standard of review employed by the district court in reviewing the administrative decision, the Fourth Circuit summarized its holding:
 
 
 27
 Because the district court is a court of original jurisdiction, not an appellate tribunal, and, thus, is without jurisdiction to review on appeal action taken administratively or judicially in a state proceeding, it was without jurisdiction to conduct such a review of the County Executive's finding.
 
 
 28
 Id. Accordingly, the Fourth Circuit, following Stude's holding that only "civil actions" may be removed to the district court, ordered the case remanded to the Virginia circuit court.
 
 
 29
 Our colleagues in the First Circuit reached a similar conclusion in Armistead v. C & M Transport, Inc., 49 F.3d 43 (1st Cir.1995), which involved a defendant's attempt to remove an action filed in state court to enforce an award issued by Maine's Workers' Compensation Commission. Removal of the case is "doubly barred," the First Circuit explained, because of the explicit statutory bar of 28 U.S.C. § 1445(c) and because the "supplementary superior court proceeding" to enforce the Commission's award does not qualify independently as a "civil action" removable under 28 U.S.C. § 1441(a). Id. at 46 (citing, inter alia, Federal Savings & Loan Ins. Corp. v. Quinn, 419 F.2d 1014, 1018 (7th Cir.1969)). Judge Selya, writing for the court, elaborated on the latter proposition:[T]he limited supplementary and appellate authority exercised by Maine courts over Commission proceedings finds no analogue in federal diversity jurisdiction. As courts of original jurisdiction, federal district courts sitting in diversity jurisdiction do not have appellate power, nor the right to exercise supplementary equitable control over original proceedings in the state's administrative tribunals.
 
 
 30
 Id. at 47.[9] Accordingly, the First Circuit ordered the cause remanded to state court.
 
 
 31
 We agree with our colleagues in the First and Fourth circuits that, in determining whether a state action seeking judicial review of a state administrative agency's decision is removable, the focus must be upon the character of the state proceeding and upon the nature of the review conducted by the state court. If the state administrative review process provides for a trial de novo, removal of the action to federal court does not require the district court to perform an appellate function that is inconsistent with the character of a court of original jurisdiction. Under those circumstances, the state proceeding can be termed a "civil action." If, however, the state administrative review process requires the state court to proceed on the basis of a more deferential review of the state agency's findings and determinations, removal of the action to federal court would require the district court to perform an appellate role with respect to the decision of the state administrative agency. The district court would not be performing a function that could be described as a "civil action" within its original jurisdiction and, accordingly, the requirements of 28 U.S.C. § 1441(a) would not be fulfilled. We turn, therefore, to an examination of how the Illinois courts review administrative actions of the type involved in this case. Our focus must be on the scope of judicial review that would have been exercised by the Cook County Circuit Court in this case had it not been removed.[10]C.
 
 1.
 
 32
 We begin our examination of Illinois practice with the Illinois Administrative Review Act. As a general proposition, the IARA provides the exclusive method by which an aggrieved party may obtain judicial review of decisions made by certain administrative agencies in Illinois. See 735 ILCS § 5/3-102. The IARA provides for judicial review of "final decision[s]" of those administrative agencies whose enabling legislation adopts, by express reference, the provisions of the Act. Id.
 
 
 33
 The judicial function performed by an Illinois court when it is reviewing agency action under the Illinois Administrative Review Act is substantially different from the function that it performs when acting as a court of original jurisdiction. In reviewing an administrative decision, the court exercises a statutory, and not a general appellate, jurisdiction. Therefore, its powers are limited to the functions enumerated in 735 ILCS § 5/3-111.[11] See Adamek v. Civil Serv. Comm'n, 17 Ill.App.2d 11, 149 N.E.2d 466, 469 (1958). 735 ILCS § 5/3-110 limits the scope of judicial review:
 
 
 34
 Scope of Review.... The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support or opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.
 
 
 35
 735 ILCS § 5/3-110. Nevertheless, the Illinois courts and, indeed, this court, have noted that an Illinois court reviewing agency action under the IARA has the authority to rule on constitutional issues. Indeed, the validity of the ordinance upon which the proceeding is based may be challenged in the judicial review proceedings. Howard v. Lawton, 22 Ill.2d 331, 175 N.E.2d 556 (1961); Murray v. Board of Review of Peoria Co., 237 Ill.App.3d 792, 178 Ill.Dec. 517, 520, 604 N.E.2d 1040, 1043 (1992); see also Reich v. City of Freeport, 527 F.2d 666, 671 (7th Cir.1976). "To hold otherwise would result in piecemeal litigation by first requiring review of an administrative body's decision and then entertaining another action to test constitutionality brought on by such decision." Howard, 175 N.E.2d at 557.
 
 
 36
 When the constitutional issue involves the fairness of the administrative proceedings or the application of constitutional principles to the facts of the case before the administrative tribunal, the court is bound by the record made at the administrative proceeding. Reich, 527 F.2d at 671. Therefore, allegations that the governing legislation has been applied in a discriminatory or arbitrary manner require the exhaustion of administrative remedies. City of Chicago v. Piotrowski, 215 Ill.App.3d 829, 159 Ill.Dec. 395, 398, 576 N.E.2d 64, 67 (1991). In such a circumstance, when the record is insufficient to permit a ruling on the constitutional claim, the court may remand the matter to the agency for further evidence. Reich, 527 F.2d at 671.
 
 
 37
 By contrast, facial attacks on the constitutionality of a statute or ordinance are not dependent on the factual record developed at the administrative hearing. Therefore, if not brought in the administrative proceeding, they may be brought without the exhaustion of administrative remedies.[12]
 
 
 38
 It is clear, then, that, as a general rule, the scope of judicial review accorded by IARA is akin to the deferential standard of review at issue found in W.M. Schlosser and in Armistead. It does not entail the trial de novo found in Stude and Horton. Although the state trial court's review extends to "all questions of law and fact presented by the entire record," it may not hear new evidence and must accept the agency's findings and conclusions on questions of fact as "prima facie true and correct." 735 ILCS § 5/3-110. Judicial scrutiny with this level of deference to the decision of the administrative agency certainly cannot be characterized as within the original jurisdiction of the court. An action for judicial review under IARA is not a "trial de novo wholly without reference to what may have been decided by the [administrative agency]." Horton, 367 U.S. at 355, 81 S.Ct. at 1574. It is an appellate proceeding and, as such, it is not a "civil action ... of which the district courts ... have original jurisdiction" within the meaning of 28 U.S.C. § 1441(a).
 
 
 39
 Illinois' administrative review procedure scheme also permits an attack on the facial validity of the statute; such attack can be brought independently of the administrative action or it may also be brought--as it was here--in the action for judicial review under the IARA. If only facial attacks are brought in the administrative review procedure, we may assume that, under the approach taken by the Supreme Court in Stude and Horton, the action in the state court would be considered an original action that raised a federal question and was therefore subject to removal to the district court. See 28 U.S.C. § 1441(a).
 
 2.
 
 40
 In addition to review under the Illinois administrative review scheme, Illinois courts also recognize the bringing of a separate action under 42 U.S.C. § 1983 to challenge the federal constitutionality of the administrative action. See Stratton v. Wenona Community Unit Dist. No. 1, 133 Ill.2d 413, 141 Ill.Dec. 453, 459, 551 N.E.2d 640, 646 (1990). Although there is precedent to the contrary in another part of the country, see FSK Drug Corp. v. Perales, 960 F.2d 6, 11 (2d Cir.1992), both the Illinois Supreme Court and this court have held that such a suit will be entertained both with respect to facial and "as applied" challenges to the administrative action. Id.; see also Davis v. City of Chicago, 53 F.3d 801, 802-03 (7th Cir.1995); Rogers v. Desiderio, 58 F.3d 299, 301 (7th Cir.1995), cert. dismissed, --- U.S. ----, 116 S.Ct. 1562, 134 L.Ed.2d 662 (1996); Button v. Harden, 814 F.2d 382, 384-85 (7th Cir.1987). Such a claim is independent of the administrative review proceeding and is therefore plenary in its scope; the court is not confined by the administrative record. Under these circumstances, if the § 1983 action were brought alone or with other claims not confined to the administrative record, the rule of Stude and Horton would allow removal to the federal court.
 
 D.
 
 41
 Here, the two complaints for administrative review filed in the Circuit Court of Cook County and removed to the district court contain facial attacks on the validity of the statute, allegations of unfairness of a federal constitutional dimension,[13] and claims based on state grounds that clearly require the exhaustion of the administrative process and that must be adjudicated on the basis of the administrative record. We therefore must decide whether, when the state action involves both claims that, if brought alone, would be removable to federal court with issues that clearly are grounded in the administrative record, removal of the entire state action to the district court is possible.
 
 
 42
 This court already has confronted a situation in which certain aspects of a state proceeding, if segregated from the remainder of that proceeding, could be characterized as a civil action within the original jurisdiction of the district court while other aspects of the same state proceeding could not be so characterized. That case provides significant guidance. In Frances J. v. Wright, 19 F.3d 337 (7th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), the court was confronted with an attempt to remove a complaint that contained claims barred by the Eleventh Amendment and the doctrine of Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890), along with other claims that were clearly subject to removal pursuant to 28 U.S.C. § 1441(a). The court held that, under those circumstances, the case could not be removed to the district court. The starting point of the court's analysis was the text of section 1441(a) which, the court noted, "only authorizes the removal of actions that are within the original jurisdiction of the federal courts." Frances J., 19 F.3d at 340. "By the plain meaning of § 1441(a), an action that contains claims barred by sovereign immunity, cannot, in whole or in part, be removed from the state courts to a federal forum because it is not an action within the original jurisdiction of the district courts." Id. The court therefore concluded that, "if even one claim in an action is jurisdictionally barred from the federal court by a state's sovereign immunity, or does not fit within the original or supplemental (see 28 U.S.C. § 1367) jurisdiction of the federal courts, then as a consequence of § 1441(a), the whole action cannot be removed to federal court." Id. at 341.
 
 
 43
 In reaching that conclusion, the court took into account the possible applicability of section 1441(c) as an alternate basis for removal. Id. at 340 n. 4. The court held that, under this subsection as well, the plain language of the statute created an insuperable barrier to removal. Judge Flaum, writing for the court, noted that the language of subsection (c) of the statute provided that "the entire case may be removed and the district court may determine all issues therein." Id. (emphasis added). Because the Eleventh Amendment and the Hans doctrine barred some of the claims from any adjudication in federal court, reasoned Judge Flaum, the district court could not determine "all issues therein." Id.
 
 
 44
 In our case, the two complaints originally filed in the Circuit Court of Cook County and then removed to the district court contained federal constitutional allegations that arguably could have been removed to the district court had they been brought alone. The complaints also contained, however, requests for the review of the agency's actions in denying the specific permits for which the plaintiffs had applied. These latter matters, grounded in state law, were clearly subject to the judicial review process outlined in IARA and, therefore, the review in the Circuit Court of Cook County was limited to the administrative record. As we already have noted, such appellate review can hardly be characterized as a "claim" in an "original action." Under these circumstances, the case removed to the district court cannot be termed a "civil action ... of which the district courts ... have original jurisdiction" within the meaning of section 1441(a).
 
 
 45
 Nor do we believe that section 1441(c) provides an alternate basis for removal. Although the situation presented here is not identical in all respects to the situation presented in Frances J., the basic reasoning of that case is applicable. Section 1441(c) permits removal only of otherwise non-removable "claims" or "causes of action." In the context of section 1441, which clearly contemplates the assumption of the responsibilities of a court of original jurisdiction by the district court, we think that these terms must be read to presuppose the existence of a "civil action." Therefore, because the district court cannot exercise original jurisdiction over "all issues therein," removal cannot be supported by section 1441(c).[14]
 
 
 46
 We hold, therefore, that the College's complaints for administrative review are not "civil action[s] ... of which the district courts ... have original jurisdiction" within the meaning of 28 U.S.C. § 1441(a). Removal of the complaints is barred, and the College's claims must be remanded to the Circuit Court of Cook County for determination. Accordingly, the judgment of the district court is reversed and the case remanded to the district court with instructions to remand cases 91 C 1587 and 91 C 5564--the College's complaints for administrative review--to the Cook County Circuit Court.[15]
 
 
 47
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Walter Jay Skinner of the United States District Court for the District of Massachusetts is sitting by designation
 
 
 [1]
 For the disposition of the federal declaratory action that had been consolidated with the complaints for administrative review, see infra note 15
 
 
 [2]
 The Chicago Landmarks Ordinance creates the Commission and establishes the procedures for designating properties as Chicago Landmarks. See Municipal Code of Chicago ("MCC") §§ 2-120-580 to 2-120-920
 
 
 [3]
 At oral argument, we invited counsel to submit letters commenting on the jurisdictional issues raised by the Fourth Circuit in Fairfax County Redevelopment & Housing Authority v. W.M. Schlosser Co., Inc., 64 F.3d 155 (4th Cir.1995). The parties' submissions have been made part of the record on appeal
 
 
 [4]
 See Fed.R.Civ.P. 12(h)(3); Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 896-97, 111 S.Ct. 2631, 2648-49, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring) (discussing the " 'nonwaivability' of the lack of subject-matter jurisdiction"); Capron v. Van Noorden, 6 U.S. (2 Cranch) 126, 127, 2 L.Ed. 229 (1804) ("Here it was the duty of the court to see that they had jurisdiction, for the consent of the parties could not give it."); Commercial Nat'l Bank of Chicago v. Demos, 18 F.3d 485, 487 (7th Cir.1994) ("That the parties have not contested, nor the district court considered jurisdiction does not impede our inquiry.... [W]e must consider the issue sua sponte when it appears from the record that jurisdiction is lacking."); United Steelworkers of America v. Libby, McNeill & Libby, Inc., 895 F.2d 421, 423 (7th Cir.1990) ("Every federal appellate court has a special obligation to satisfy itself of the jurisdiction of the lower federal courts in a case under review.") (citations omitted)
 
 
 [5]
 Section 2-120-800 provides:
 Final Commission Decision. The written decision of the Commission approving or disapproving an application for a permit ... shall be on the date it issues a final administrative decision appealable to the Circuit Court of Cook County under the provisions of the Illinois Administrative Review Act, Ill.Rev.Stat. Chapter 110, Sec. 3-101 et seq. (1985).
 MCC § 2-120-800.
 
 
 [6]
 Section 2-120-860 provides:
 Appeal from Commission Decision. The determination by the Commission ... approving or disapproving an application for an economic hardship exception shall, on the date it issues, be a final administrative decision appealable to the Circuit Court of Cook County under the provisions of the Illinois Administrative Review Act, Ill.Rev.Stat. Chapter 110, Sec. 3-101, et seq. (1985).
 MCC § 2-120-860.
 
 
 [7]
 The Supreme Court had also confronted the issue of federal court review of state administrative decisions in Burford. There, the Sun Oil Company had invoked the diversity jurisdiction of the district court to attack the validity of an order of the Texas Railroad Commission granting Burford a permit to drill four oil wells on a certain plot of land. Sun Oil further contended that the Railroad Commission's order denied it due process of law. Justice Black, in remarks prefatory to the Court's discussion of abstention by the federal courts, wrote:
 There is some argument that the action is an "appeal" from the State Commission to the federal court, since an appeal to a state court can be taken under relevant Texas statutes; but of course the Texas legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction, and the Circuit Court of Appeals in its decision correctly viewed this as a simple proceeding in equity to enjoin the enforcement of the Commission's order.
 Burford, 319 U.S. at 317, 63 S.Ct. at 1099 (footnotes omitted).
 
 
 [8]
 In a footnote, the Supreme Court noted that, under the decisions of the Texas Supreme Court, the administrative award becomes vacated and unenforceable once the state court acquired jurisdiction of the cause and the parties. "This makes it all the more clear that the matter in controversy between the parties to the suit is not merely whether the award will be set aside since the suit automatically sets it aside for determination of liability de novo." Horton, 367 U.S. at 355 n. 15, 81 S.Ct. at 1574 n. 15
 
 
 [9]
 The reasoning employed by the First Circuit in Armistead is similar to that found in federal workmen's compensation cases decided before the enactment of 28 U.S.C. § 1445(c). These cases took the view that, once the state administrative process had come to an end, the question of whether a suit challenging an award may be brought in the district court depends upon the nature of the review provided by the state statute:
 For example, where a right of trial de novo is provided in a state court of general jurisdiction, the de novo trial constitutes an original civil action; where only a right of an appellate, quasi-administrative review is provided in a state court, this is not a civil action within the cognizance of the original jurisdiction of the federal court.
 1A James Wm. Moore et al., Moore's Federal Practice para. 0.167 & n. 15 (Supp.1994) (collecting cases); e.g., Decker v. Spicer Mfg. Div. of Dana Corp., 101 F.Supp. 207 (N.D.Ohio 1951); see also 1A James Wm. Moore et al., 0.157[4.-3] & nn. 6-7 ("A statutory proceeding in state court to review an administrative determination is a civil action, unless the review proceeding is such an integral part of the administrative process as to constitute a continuation of the administrative proceeding."); cf. Federal Sav. & Loan Ins. Corp. v. Quinn, 419 F.2d 1014, 1018 (7th Cir.1969) (noting that "[a] supplementary proceeding, which is substantially a continuation of a prior suit, is not removable"); Collins v. Public Serv. Comm'n of Missouri, 129 F.Supp. 722 (W.D.Mo.1955) (ruling that statutory state court review of Public Service Commission's finding that proposed condemnation would be in the public interest is a continuation of the administrative proceedings and not a civil action brought in a state court of which the district courts have original jurisdiction). Our holding today implicates the same concerns articulated in this line of cases.
 
 
 [10]
 Although the precise procedural contexts have varied, we note that other courts have concluded that district courts are without jurisdiction to review on appeal the findings of state agencies. See Labiche v. Louisiana Patients' Compensation Fund Oversight Bd., 69 F.3d 21, 22 (5th Cir.1995) (per curiam) ("We have reviewed [the statutes fixing the jurisdiction of the district courts] and none would authorize appellate review by a United States District Court of any actions taken by a state agency."); Armistead, 49 F.3d at 47-48 & n. 4; W.M. Schlosser, 64 F.3d at 157-58 (collecting cases); FSK Drug Corp. v. Perales, 960 F.2d 6, 11 (2d Cir.1992) ("This Court lacks jurisdiction to hear the Company's claim that the [state agency's] substantive decision was arbitrary and capricious."); Shell Oil Co. v. Train, 585 F.2d 408, 414 (9th Cir.1978) (holding that the district court was without jurisdiction to review the denial of a permit by a state agency); Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd., 454 F.2d 38, 42 (1st Cir.1972) ("To the extent that the federal district court would treat a case removed from the [state court] as a review of an administrative decision by giving deference to the [agency's] determination, ... this would place a federal court in an improper posture vis-a-vis a non-federal agency."); Trapp v. Goetz, 373 F.2d 380, 383 (10th Cir.1966) ("An appeal from a state administrative board is not a 'civil action' as required by 28 U.S.C.A. § 1331 or § 1332."); cf. Frison v. Franklin County Bd. of Educ., 596 F.2d 1192, 1194 (4th Cir.1979) (noting that the district court should have declined pendent jurisdiction over a demoted school teacher's state law claim because "it is essentially a petition for judicial review of state administrative action rather than a distinct claim for relief"); Crivello v. Board of Adjustment of the Borough of Middlesex, 183 F.Supp. 826 (D.N.J.1960) (noting, in the course of remanding a proceeding brought in lieu of a prerogative writ of certiorari to review decision of zoning board, that "the nature of the proceeding is necessarily determinative of its removability under Sections 1441 and 1442"); Collins v. Public Serv. Comm'n. of the State of Missouri, 129 F.Supp. 722, (W.D.Mo.1955) (noting "doubts as to whether [a petition to review an order of state agency] constitutes a 'civil action' " and holding that such a proceeding is not "one 'of which the district courts of the United States have original jurisdiction' within the meaning of the removal act"). The only case expressing the opposite view is Range Oil Supply Co. v. Chicago, Rock Island & Pacific Railroad, 248 F.2d 477 (8th Cir.1957). There, the Eighth Circuit took the view that, once the aggrieved party has taken an appeal to the state court, the proceeding becomes a civil action which is removable to the district court so long as the "jurisdictional requisites" of diversity of citizenship and amount in controversy are met. Id. at 479. We are unpersuaded by this reasoning. As the Fourth Circuit noted in W.M. Schlosser, the Eighth Circuit "did not consider that the diversity statute vests only 'original' and not 'appellate' jurisdiction in the district courts." See 64 F.3d at 158. The Range Oil court equates "original jurisdiction" with the prerequisites of diversity jurisdiction, rendering the former requirement meaningless
 
 
 [11]
 Under 735 ILCS § 5/3-111, the circuit court has the power to stay an administrative decision; to order the agency to amend, complete, or file the record of the administrative proceeding; to substitute, dismiss, or realign parties; to affirm or reverse the agency's decision in whole or in part; to remand the decision with proper instructions; and to enter money judgments where appropriate. The Illinois courts have construed strictly section 3-111 and have limited the reviewing court to exercising the powers enumerated therein. E.g., Chestnut v. Lodge, 62 Ill.App.2d 27, 210 N.E.2d 336, 341 (1965), rev'd on other grounds, 34 Ill.2d 567, 216 N.E.2d 799 (1966)
 
 
 [12]
 The Illinois Supreme Court made this distinction succinctly in Bank of Lyons v. County of Cook, 13 Ill.2d 493, 150 N.E.2d 97, 98 (1958):
 Where the alleged constitutional infirmity is to be found in its terms, prior application for administrative relief is unnecessary. On the other hand, where it is alleged that a statute valid upon its face is applied in a discriminatory or arbitrary manner, the rule generally prevails that recourse must be had in the first instance to the appropriate administrative board.... In such cases the validity or invalidity depends almost wholly upon a determination of factual matters in which the specialized agency is thought to be more proficient.
 The earlier pronouncement in Bright v. City of Evanston, 10 Ill.2d 178, 139 N.E.2d 270, 274 (1957), was even more graphic in its statement of the general rule:
 A review of applicable authorities would seem to indicate that where it is claimed the effect of an ordinance as a whole is to unconstitutionally impair the value of the property and destroy its marketability, direct judicial relief may be afforded without prior resort to remedies under the ordinance. Under this rule one who seeks relief from an ordinance on the ground that it is void in its entirety is not obliged to pursue the machinery of the ordinance itself for his remedy. On the other hand, where the claim is merely that the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, and no attack is made against the ordinance as a whole, judicial relief is appropriate only after available administrative remedies have been exhausted.
 See also Head-On Collision Line, Inc. v. Kirk, 36 Ill.App.3d 263, 343 N.E.2d 534, 538 (1976).
 
 
 [13]
 It is unnecessary for us to determine whether these claims can be said to be grounded in § 1983
 
 
 [14]
 We cannot accept, therefore, the submission that, because the College's complaints contain several challenges to the Chicago Landmark Ordinance arising under the federal constitution, the district court's jurisdiction in this case may be premised on 28 U.S.C. § 1331, the federal question statute. In effect, the defendants assert that these claims are separate and distinct from the arguments raised on administrative review. The defendants, in essence, argue that we should view the College's "Complaint for Administrative Review" as a claim for administrative review coupled with a removable "civil action ... of which the district courts ... have original jurisdiction." We note, however, that 28 U.S.C. § 1331, like the diversity statute, confers only "original jurisdiction of ... civil actions." In this critical respect, therefore, there is no difference between federal question and diversity cases for purposes of applying the teachings of Stude and Horton. See Trapp, 373 F.2d at 383 ("An appeal from a state administrative board is not a 'civil action' as required by 28 U.S.C.A. § 1331 or § 1332.")
 
 
 [15]
 The district court also dismissed case 91 C 7849--the federal declaratory judgment action--with prejudice as moot and with leave to reinstate if the court's judgments in cases number 91 C 1587 and 91 C 5564 were vacated, reversed or remanded on appeal. In light of our holding, we remand case number 91 C 7849 to the district court so that it may determine, in the first instance, the appropriate treatment of this declaratory judgment action pending resolution of the College's administrative review claims